# CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. BERGSCHICKER.

[No. 20,257. Filed February 3, 1904.]

LIMITATION OF ACTIONS.—*Action for Personal Injuries.*—*Paragraph of Complaint Filed after Two Years.*—In an action against a railroad company based upon the employers' liability act, and brought within the time limited by law, the complaint charged defendant's engineer with affirmative negligence in applying the steam and causing the locomotive to back. After the expiration of the period of limitations an additional paragraph was filed charging negligent acts of omission on the part of the engineer in the manner of adjusting the machinery of the locomotive. During the trial the first paragraph was dismissed and a verdict returned on the additional paragraph. *Held*, that the statute of limitations had not run, the cause of action being the same in both paragraphs. *pp. 109, 110.*

RAILROADS.—*Injury to Employe.*—*Rules.*—*Construction.*—*Ejusdem Generis.*—*Evidence.*—A rule of a railroad company providing that enginemen "must not leave their engine with steam on unless it is in charge of an employe of this company. When it is placed upon a siding, or elsewhere, to stand, the throttle must be fastened shut, the reverse lever fixed on the center, and the tender brakes must be shut tight," has no application to a locomotive engine while under the direct and immediate control of its engineer; nor has the rule any application to a locomotive which the engineer had brought to a temporay stop upon a main track, since the words " or elsewhere " must be construed to refer to things of the same kind as the word "siding." *pp. 110-112.*

SAME.—*Injury to Fireman.*—*Negligence of Engineer.*—*Employers' Liability Act.*—Under the employers' liability act (§7083 Burns 1901), a railroad company is liable for injuries to a fireman while his locomotive was taking coal, although the fireman had authority to indicate to the engineer where to stop the locomotive, when the injury was caused by

the negligence of the engineer in charge of the locomotive in permitting it to move while the coal was being taken.  *pp. 113, 114.*

CUSTOMS AND USAGES —*Practice as to Position Taken by Firemen when Locomotive is Coaling.—Evidence.*—In an action against a railroad company for injuries to a fireman resulting from the negligence of the engineer in permitting his locomotive to move while coaling, it is competent for the plaintiff to prove a custom or practice among the company's firemen as to the position occupied at the particular coaling place by firemen while running with the particular engineer, where it is necessary to show that the engineer had notice of the fact. *p. 114.*

From Henry Circuit Court; W. O. *Barnard,* Judge.

Action by John W. Bergschicker against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals.  Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*J. T. Dye, L. J. Hackney* and *M. E. Forkner,* for appellant.

*Theodore Shockney, J. S. Engle, F. S. Caldwell* and W. G. *Parry,* for appellee.

GILLETT, C. J.—Appellee, who was a locomotive fireman, brought this action to recover for injuries sustained in having his legs crushed between the roof of the cab of a locomotive and a steel apron which was being used to guide coal from a coal chute into the tender of said locomotive.  The injury occurred on the 19th day of December, 1898.  There was a verdict and judgment for appellee.

The first question in the case relates to the statute of limitations.  The action was instituted on the 25th of January, 1900.  There were originally two paragraphs of complaint.  A demurrer was sustained to the first of said paragraphs.  On the 15th day of January, 1901, and while said second paragraph of complaint was still pending, appellee filed an additional paragraph of complaint.  On the 20th day of May, 1901, while the pleadings were in the situation indicated, appellee filed fourth and fifth paragraphs of complaint in the action.  On the conclusion of

the hearing of the evidence, appellee dismissed the second, third, and fifth paragraphs of his complaint.

Said second paragraph, which was filed within the period of time required by law, was founded on the employers' liability act, and charged appellant's engineer with an affirmative act of negligence in applying the steam and causing the locomotive to back. The fourth paragraph, on which the verdict and judgment of appellee rests, charges that there were negligent acts of omission on the part of the engineer in the manner of adjusting the machinery of said locomotive, whereby the steam escaped into the steam-chests and caused said locomotive to back.

The statute of limitations has not run against appellee. The cause of action throughout has been the same. *Jeffersonville, etc., R. Co.* v. *Hendricks,* 41 Ind. 48; *Chicago, etc., R. Co.* v. *Bills,* 118 Ind. 221; *Ohio, etc., R. Co.* v. *Stein,* 140 Ind. 61; *Shirk* v. *Coyle,* 2 Ind. App. 354. It is not material that the second paragraph was subsequently dismissed. There has been throughout but one action, and the character of the demand has remained the same.

The evidence shows that the accident occurred in the night-time. The locomotive was headed west, and had been stationed opposite the coaling station at Union City, on the main track, to take coal. After arranging the apron, appellee pulled the chain which unlatched the gate to the coal chute, and seated himself upon the roof of the cab, with his legs hanging over the back of it, while the coal ran over and along the apron into the tender. After about one ton of coal had run out, the locomotive moved back, injuring appellee as before stated. The theory of appellee was that the throttle leaked or was not closed tightly, and, further, that ordinary care in the circumstances required, in addition to closing the throttle, that the reverse lever should have been put on the center, the cylinder-cocks opened and the air-brakes applied. Just what was done, and what the engineer should have done, in the exercise

of ordinary care in the circumstances, were questions of fact that formed a considerable part of the controversy before the jury.

Over the objection and exception of appellant, appellee, after the proper introductory evidence, read to the jury the following rule, found in appellant's book of rules under a subdivision entitled "Enginemen:" "264. They must not leave their engine with steam on unless it is in charge of an employe of this company. When it is placed upon a siding, or elsewhere, to stand, the throttle must be fastened shut, the reverse lever fixed on the center, and the tender brakes must be shut tight." At the proper time appellant tendered the following instruction, which was refused by the court: "Rule No. 264 of the defendant company has been given in evidence. That rule has no application to a locomotive engine while under the direct and immediate control of its engineer." An exception was duly reserved to the refusal to give this instruction, and this ruling, as well as the ruling admitting the rule in evidence, were assigned as grounds for a new trial. It is clear that it was the duty of the trial court in this case, upon application, to construe the rule, and if it appeared on its face to be irrelevant, the court should have refused to permit it to go in evidence.

The first sentence of the rule was not applicable to the case on trial, but it furnishes a context of some importance in determining the meaning of the next provision. That provision has no application except as a locomotive is "placed upon a siding, or elsewhere, to stand." Considering that it purports to be a rule that admits of no exception as to cases coming within its terms, and that all of these precautions would in many circumstances be wholly unnecessary if the locomotive were under the direct and immediate charge of the engineer, it appears to us that appellant's view, as announced in the instruction tendered, is correct. Moreover, we think that the rule in question had

no application to a locomotive which the engineer had brought to a temporary stop upon a main track. The words "or elsewhere" following the word "siding" are within the *ejusdem generis* doctrine. In the construction of statutes, contracts, and other instruments of writing, the rule is that general words following the mention of a particular person or thing are ordinarily to be construed as *ejusdem generis*. *Miller* v. *State*, 121 Ind. 294; *Nichols* v. *State*, 127 Ind. 406; Potter's Dwarris, Statutes, 236; 17 Am. & Eng. Ency. Law (2d ed.), 6; 21 Am. & Eng. Ency. Law (2d ed.), 1012 *et seq.*, and cases cited; Sutherland, Stat. Constr., §276 *et seq.* As within this rule, it may be further stated that general words are ordinarily not interpreted as extending to persons or things in a class superior to those which have been before specifically mentioned. *Archbishop of Canterbury's Case*, 2 Rep. 46; *Copeland* v. *Powell*, 1 Bing. 369; *Casher* v. *Holmes*, 2 Barn. & Ad. 592.

Attention may be called to the case of *State* v. *City of Camden*, 52 N. J. L. 289, 19 Atl. 539, since it involved the interpretation of the words "or elsewhere" when used in circumstances similar to their use in the rule under consideration. That case was a prosecution under an ordinance defining and prohibiting disorderly conduct "in the streets and highways or elsewhere within the city." It was held that the word "elsewhere," as used, must be regarded as signifying places *ejusdem generis*, namely, parks, squares, and places frequented by the public.

By the use of the word "siding" in the rule under consideration, there is naturally suggested to the mind, not the main track, a relatively superior thing, that presumably would have been mentioned first, if it had been intended to be within the rule, but places like sidings, as switches, turntables, roundhouses, etc. Nor do we think that in thus constructing the rule we fail to give it a practical construction. It is true that the main track should be regarded as a place of constant danger, but for that reason it may

be supposed that there was no written rule applicable to locomotives thereon, since it would be assumed, without a rule, that a locomotive would not be permitted "to stand" upon the main track in the absence of the engineer. While there might be circumstances in which it would be proper or even necessary for an engineer to comply with the directions in the latter part of the rule, while the locomotive of which he was in charge was standing upon the main track, yet we perceive no reason inherent in such a state of circumstances which should lead us to affirm that it was the purpose of the rule to direct his conduct in such cases, regardless of every situation which might confront him.

It is evident from an examination of the record that the existence of said rule had no unimportant part in the result attained. The leading contention upon the trial seems to have been over the question as to what should have been done by the engineer, in view of the circumstances, to acquit him of the charge of negligence, and, with the rule in evidence, the jury could but infer that appellant's contention that all of the precautions mentioned in the rule were unnecessary was disputed by the deliberate provision of the company, made in advance of the accident, as to the engineer's duty.

Appellant's counsel contend that the evidence, without contradiction, shows that in taking coal appellee was in no respect subject to the directions of the engineer, but was free to act upon his own judgment and discretion, and that therefore he has not shown himself within the employers' liability act. We can not affirm that the verdict is contrary to law, in view of the opening language of the fourth subdivision of the first section of said act (Acts 1893, p. 294, §7083 Burns 1901). Although appellee was authorized to indicate to the engineer where to stop the locomotive when coal was to be taken, yet the locomotive was in the immediate charge of the engineer, and in a

proper case the company would be liable for a subsequent act of negligence on his part in permitting such locomotive to move. See, as to the construction of said portion of the statute, *Baltimore, etc., R. Co.* v. *Little,* 149 Ind. 167; *Indianapolis Union R. Co.* v. *Houlihan,* 157 Ind. 494, 54 L. R. A. 787; *Thacker* v. *Chicago, etc., R. Co.,* 159 Ind. 82, 59 L. R. A. 792.

Appellee was permitted to prove upon the trial that for some time prior to his injury there had been a usage, or rather a practice, among the firemen of appellant's locomotives, in coaling at Union City, when such locomotives were headed west, to remain between the apron and the cab. As it was necessary in this case to show that the engineer had such notice concerning the situation of appellee that a duty to exercise care for his safety arose, the judges agree that it was competent to show what the general practice of firemen running with the particular engineer had been. Whether the evidence could take any broader scope than this the court will not determine until a case shall arise in which it is essential to dispose of such question.

Many other matters have been urged upon our consideration by counsel for appellant as grounds of reversal, but as they may not arise upon a subsequent trial of the cause, it is unnecessary to consider them.

Judgment reversed, with a direction to sustain appellant's motion for a new trial.

Monks, J., did not participate.