## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

PATRICK MAHAN, administrator, *vs.* NEWTON AND BOSTON STREET RAILWAY COMPANY.

Middlesex.    March 15, 1905. — September 7, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Negligence*, In maintaining electric wires.    *Street Railway.    Evidence.*

In an action by the administrator of the estate of a lineman employed by an electric light company, against a street railway company, for negligently causing the death of the plaintiff's intestate, it appeared that the intestate was killed by an electric current passing through his body while he was at work putting a cross arm upon a pole belonging to the electric light company, that the electricity had been shut off from the wires of that company at the place where he was working, that, as a car of the defendant approached, the trolley pole lifted the trolley wire very near the electric light wires, and one witness testified that "the trolley wire was shoved up against the electric light wires." There was evidence tending to show that it was customary for street railway companies to maintain guard wires to prevent other wires above from coming in contact with the trolley wire and thus becoming charged, and that such guard wires were in general use at the time of the accident. *Held*, that there was evidence for the jury of negligence on the part of the defendant, and that it could be found that this negligence resulted in the death of the plaintiff's intestate.

In an action by the administrator of the estate of a lineman employed by an electric light company, against a street railway company, for negligently causing the death of the plaintiff's intestate by allowing the wires of the electric light

company at the point where the plaintiff was working to become charged with electricity by contact with the trolley wire of the defendant, it appeared, that the plaintiff's intestate was not a regular lineman and had been employed in that capacity only a short time, that the company employing him had a rule that the lineman should treat every wire as a live wire, and provided rubber gloves for men to use in handling dangerous wires, that the intestate was at work without rubber gloves putting a cross arm on a pole belonging to the electric light company, and that the electricity had been shut off from the wires of that company, when he was killed by an electric current passing through his body, and that when he mounted the pole he had no reason to believe that any of the wires of the electric light company then were dangerous. There was nothing to show that the intestate's attention was called to the position of the trolley wire beneath the wires of the electric light company or to the danger of the wires being brought in contact by the trolley pole of a car passing below pushing the trolley wire upward. *Held*, that the question of the due care of the plaintiff's intestate was for the jury.

In an action by the administrator of the estate of a lineman employed by an electric light company, against a street railway company, for causing the death of the plaintiff's intestate by its alleged negligence in failing to maintain guard wires above its trolley wire to prevent it from coming in contact with the wires of the electric light company, the plaintiff properly may introduce evidence that it is customary for street railway companies to maintain guard wires to prevent other wires above from coming in contact with the trolley wire and thus becoming charged, and that such guard wires were in general use at the time of the accident, and also may show that on an electric railway constructed in the usual manner a trolley wire would be lifted between three and four inches by the passage of a car along the track.

MORTON, J.   This is an action of tort by the administrator of the estate of John P. Mahan to recover for personal injuries to and for the death of his intestate, which are alleged to have been caused by the defendant's negligence while the intestate was in the exercise of due care.   There was a verdict for the plaintiff, and the case is here on exceptions by the defendant to the refusal of the judge to rule as requested by it that the plaintiff was not entitled to recover and to direct a verdict for the defendant, and also to the admission of evidence.

The accident occurred on November 4, 1899.   The plaintiff's intestate was at the time a lineman in the employ of the Newton and Watertown Gas Light Company, and was at work putting a cross arm upon a pole belonging to that company in Beacon Square, Watertown.   While so at work an electric current passed into and through his body causing his death and the injuries complained of.   The plaintiff contends that the current came from the contact of the trolley wire of the defendant with an electric light wire belonging to the gaslight company,

and that there were no guard wires above the trolley wire as there should have been to prevent such an accident. We think that there was evidence supporting this contention.

There was testimony tending to show that, just below the place where the plaintiff's intestate was engaged in putting up the cross arm, there were two other cross arms carrying wires belonging to the gaslight company. The upper arm carried two wires belonging to the so called commercial circuit, and the lower carried wires belonging to the incandescent circuit which supplied the street lights of the town. There was testimony tending to show that when the plaintiff's intestate mounted the pole there was no current passing over any of these wires. Plugs had been pulled out of a cut-off box near by which had the effect, it was testified, of rendering the commercial wires dead wires from there to the end of the circuit, which distance included the pole on which the plaintiff's intestate was working. The incandescent circuit had been shut off at the works at 12.30 A. M., and an arc circuit, which was the only other one operated by the gaslight company, had been shut off at the works at between five and 5.30 A. M. The cut-off box was examined half an hour after the accident and was found with the plugs out and in good order. There was no dispute that the man was killed by the passage of an electric current through his body, and the testimony above referred to and other testimony tended to show that the current could not have come from the works of the gaslight company. The accident did not occur till a car of the defendant company approached the scene, and at the time of the accident there was testimony tending to show that the car was only a short distance away. There also was testimony tending to show that as the car approached the trolley pole lifted the trolley wire very near to the electric light wires, and "one witness testified that the trolley wire was shoved up against the electric light wires." In view of this and other testimony we do not see how it could be said or ruled that there was no evidence that the current which killed the plaintiff's intestate came from the trolley wire of the defendant. There was testimony to the effect that the cut-off box contained a fuse that would have burned out if at any time before the accident any heavy current had

got into the wires connected with the box from an outside source, and that the fuse was in good condition after th accident. There also was testimony tending to show that a current of five hundred volts, which was the current carried by the trolley wire, would not kill a man, or, at least, would not kill him unless he was well grounded, and that the plaintiff's intestate was not well grounded. But these were matters for the jury to pass upon. It could not be ruled as matter of law that by reason of them the jury would not be warranted in finding that the current came from the trolley wire. The fact, however, that the current came from the defendant's trolley wire (if it did so come) would not, of itself, without anything more, render the defendant liable. It must appear further, or there must be evidence tending to show, that the plaintiff's intestate was killed as the result of a breach of some duty which this defendant owed to him. The negligence relied on is the failure of the defendant to put up and maintain guard wires. There was evidence, which was objected to by the defendant, tending to show that it was customary to use such wires and that they were in general use at the time of the accident, and that they were used to prevent other wires from coming in contact with the trolley wire, which was an uncovered wire, and thus becoming charged. The witness who testified to this admitted on cross-examination that some systems did not use such wires and that they were not used in many important localities in this vicinity. The defendant was operating cars in the public streets by the use of a highly dangerous agency. It was bound to know that other wires were or might be strung along the streets for various purposes and that persons would or might be employed to work upon them, and it was its duty in the exercise of reasonable care to adopt such precautions as were proper to prevent its own wires from coming in contact with the wires upon which such persons were or might be employed and injuring them. It was for the jury to say, taking everything into account, including the expense and practicability of guard wires and the way in which the trolley wire was put up, as to which there was evidence from the defendant, whether the defendant had performed this duty, and whether the plaintiff's intestate was injured and killed in consequence of its failure to do so. It

could not be ruled as matter of law that there was no evidence of negligence on its part, or that the negligence, if any, had not resulted in harm to the plaintiff's intestate. *McKay* v. *Southern Bell Telephone Co.* 111 Ala. 337. *City Electric Street Railway* v. *Conery*, 61 Ark. 381. *Atlanta Consolidated Street Railway* v. *Owings*, 97 Ga. 663. *Potts* v. *Shreveport Belt Railway*, 110 La. 1. *Brooks* v. *Consolidated Gas Co.* 41 Vroom, 211. *New York & New Jersey Telephone Co.* v. *Bennett,* 33 Vroom, 742. *Electric Railway* v. *Shelton,* 89 Tenn. 423. *Block* v. *Milwaukee Street Railway*, 89 Wis. 371.

The defendant further contends that the plaintiff's intestate was not in the exercise of due care. He was not a regular lineman. He had been working for the gaslight company two weeks when killed, and a year and a half before had worked for it about six weeks. So far as appears this had been the extent of his experience in the electric light business. The superintendent of the gaslight company testified that the linemen were to look out for their own safety and that a notice to that effect was posted at the works, and the men also were instructed by the foreman. He also testified that there was a rule that the linemen should treat every wire as a live wire, and that the company provided rubber gloves for men to use in handling dangerous wires. But there was evidence tending to show that the deceased had no reason to believe when he mounted the pole that any of the gaslight company's wires which it carried were then dangerous, and if they were not there was no occasion for him to use rubber gloves, even if such gloves had been provided by the company and were there for use, of which latter fact there was slight, if any, evidence. The rule that linemen should treat every wire as a live wire was made in their interest and for their safety as well as in the interest of the company, and was intended as a general standard of conduct for the men in working about the wires of the company. It would be going too far to say that in no case and under no circumstances would a lineman be justified in treating a wire as a dead wire because of the rule. That would be making the rule itself a conclusive standard of negligence. Whereas it was at most only one circumstance to be considered with others. The relative position of the trolley

wire and the electric light wires was open to view. But there was nothing to show that the intestate's attention was called to it, or that if it had been he would have appreciated the danger from a contact of the two wires. And he could hardly be deemed at fault for not observing the relative position of the two wires, when the superintendent of the gaslight company, whose business it was to notice such matters, testified that he might have driven through the square without seeing it. The question whether the intestate was in the exercise of due care was eminently one for the jury.

There remain two questions of evidence, one, already referred to, of the customary use of guard wires, and the other that in this part of the country, according to the usual construction, a trolley wire would be lifted between three and four inches by the passage of a car along the track. We construe the evidence relating to the former as meaning simply that there was an appliance known as a guard wire in common use for the purpose of preventing contact between trolley wires and other wires. So construed the evidence was clearly admissible. *Dolan* v. *Boott Cotton Mills*, 185 Mass. 576, 579, and cases cited. In regard to the other matter we think that the evidence was admissible as tending to support the plaintiff's contention that the accident was caused by a contact between the trolley wire and the electric light wires. Exceptions were taken to the admission of other evidence, but they have not been argued and we treat them as waived.

*Exceptions overruled.*

*W. I. Badger & W. H. Hitchcock*, for the defendant.

*J. H. Vahey*, (*P. Mansfield* with him,) for the plaintiff.