## Ambre v. Postal Telegraph-Cable Company.

[No. 6,308. Filed January 7, 1909.]

1. Negligence.—*Telegraphs and Telephones.—Using Same Poles.— Master and Servant.—Assumption of Risk.*—It does not constitute negligence *per se* for a telegraph company to string its wires on poles used by an electric light company; and a servant engaged in the repair of such telegraph company's wires assumes the risks ordinarily incident to work in such circumstances. p. 51.

2. Evidence.—*Judicial Notice.—Electric Wires.—Dangers.*—Courts take judicial notice that electric wires, on which there is no current, are not dangerous. p. 52.

3. MASTER AND SERVANT.—*Assumption of Risk.—Repairing Telegraph Wires.—Charged Electric Light Wires.—Contributory Negligence.—Jury.*—A servant in carrying, in the day time, a naked, grounded wire up a telegraph pole on which are strung telegraph and electric light wires, is not negligent, as a matter of law, for his failure to inspect such light wires to determine whether they are charged with electricity, nor does he, as a matter of law, assume such risk, both questions being for the jury. p. 53.

4. TRIAL.—*Instructions.—Invasion of Province of Jury.—Assumption of Risk.—Contributory Negligence.*—An instruction that a servant engaged to repair telegraph wires, in carrying a naked, grounded wire up a telegraph pole on which were strung telegraph and electric light wires, one of which light wires, without any knowledge by such servant, was charged, to plaintiff's damage, assumed the risk of injury from such cause and was also guilty of contributory negligence, invades the province of the jury. p. 56.

5. TRIAL.—*Instructions.—Dangerous and Safe Method of Performing Work.—Contributory Negligence.*—An instruction that if a servant, in repairing telegraph wires, carried a naked, grounded wire up a telegraph pole on which were strung telegraph and electric light wires one of which light wires was charged, to plaintiff's damage, when he could have tested such wires without danger, he is guilty of contributory negligence, is bad, since the element of plaintiff's knowledge of the danger is omitted. p. 57.

From Laporte Superior Court; *Charles A. Truesdell,* Special Judge.

Action by August Ambre against the Postal Telegraph-Cable Company. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Peter Crumpacker* and *D. J. Moran,* for appellant.

*John B. Peterson* and *Loesch, Scofield & Loesch,* for appellee.

RABB, J.—The appellee is a corporation engaged in the transmission of telegrams, and whose lines run through the city of Hammond. The South Shore Gas & Electric Company is a corporation engaged, among other things, in furnishing to the city and citizens of Hammond electric lights, and by a mutual agreement between the two companies they both used the same line of poles for their wires

along a certain street in the city of Hammond, and on the particular pole in question the telegraph company had twenty-two wires strung on three cross arms, and the light company had thirteen wires strung on two cross arms, the cross arms being about twenty inches apart, and the light wires being below the telegraph wires. The appellant was engaged in the service of appellee in what is known to the business as a "trouble man," his duties being to locate and remedy any disturbance on the line that interrupted the transmission of messages, and in the discharge of these duties it was necessary that he climb the poles and work among the wires. Having taken with him, to be used in making tests to locate an interruption on one of appellee's lines, a short bare wire attached to the ground, the appellant, while engaged at this work on the pole mentioned, was knocked off of the pole by an electric shock, caused by his coming in contact with an electric light wire which at the time was carrying a heavy and dangerous voltage of electricity, and for his injuries thereby occasioned appellant brought this action against both companies. Issues were formed, a jury trial had, resulting in a general verdict in favor of appellant against the light company, and in favor of appellee against appellant, and with the verdict the jury returned answers to certain interrogatories. Appellant's motion for a new trial was overruled, and judgment rendered on the verdict in favor of the appellee for costs.

The only error assigned here is the overruling of appellant's motion for a new trial.

The court, over appellant's objection and exception, permitted appellee to propound the following question to its witness Harrison: "You may state whether a lineman of ordinary experience and caution would undertake to carry a bare, grounded wire up a pole, the two cross arms of the pole carrying electric light wires, without using any precaution to prevent the bare, grounded wire's coming in contact with

the uninsulated wire of the electric light company on the lower cross arm?'' This was answered as follows: ''I should say he did not use good judgment.''

Over the objection and exception of appellant the court gave to the jury the following instructions: ''(23) The defendant Postal Telegraph-Cable Company was not bound to give the plaintiff warning or notice of the fact that these wires upon the pole belonging to the South Shore Gas & Electric Company, where the plaintiff was injured, were at the time carrying a dangerous current of electricity. The presence of said company's wires upon the pole was in itself sufficient to put the plaintiff upon inquiry as to their condition in that respect.'' ''(13) If there is a safe and an unsafe way, both reasonably convenient, of doing work, and an adult of ordinary understanding voluntarily, without instruction, and without asking for instructions, undertakes to do such work, he must, at his peril, choose the safe way, and if he chooses the unsafe way and is injured, he cannot recover for such injury.''

The admission of this evidence, and the giving of these instructions, are among the reasons assigned for a new trial, and urged here as grounds for a reversal of the judgment below.

The appellee contends: (1) That whatever errors in the admission or rejection of evidence, or in the instructions given by the court to the jury, are apparent in the record, they furnish no sufficient reason for a reversal of this cause, because the answers to the interrogatories render the instructions complained of harmless, and the evidence which is in the record clearly shows that appellant had no case against the appellee; that whatever hazard there was in connection with the joint use of the telegraph poles by both companies was open and apparent, and was known to appellant, and therefore assumed by him; (2) that the evidence clearly shows that the appellant was guilty of contributory negligence, that he could, by the exercise of his

sense of sight, have seen the splices in the electric light wire where there was no insulation, and that the taking of a bare grounded wire among the electric light wires was itself an act of negligence regardless of appellant's knowledge or want of knowledge of the uninsulated places in the light wires; (3) that the evidence discloses that there was a cable box on the pole from which appellant fell, and that by opening this cable box appellant could have made a test from the wires in the box in a manner that would have involved no risk whatever of the injury he received, and that he voluntarily chose to perform the work in the manner he did, thereby encountering the risk and danger, and for that reason he has no case.

The appellant's action is, so far as the appellee is concerned, grounded on two alleged acts of negligence—one of commission, and the other of omission on the part of appellee. It is alleged that appellee was guilty of negligence in stringing its wires on the same pole on which electric light wires were carried; that appellee knew the electric light wires carried dangerous currents of electricity in the daytime as well as at night; that appellant was ignorant of the fact that the light wires were used in the daytime; that appellee gave to appellant no notice or warning of the fact that the electric light wires were charged with dangerous currents of electricity during the daytime, when appellant's work was to be performed, and that for its failure so to notify appellant it was guilty of negligence.

It is manifest that the appellant has no cause of action against appellee on the sole ground that the wires of the two companies were carried on the same pole. The telegraph wires and light wires were plainly distinguishable, and when the appellant entered the appellee's service he knew that the wires of the two companies were carried on the same poles, and therefore assumed all ordinary risks incident to his work. But the other charge of negligence presents a different proposition. We think

the appellant's testimony fully justifies the statement that he understood all about the dangerous character of the current carried over electric light wires; that he knew that it was a dangerous and deadly element; that its presence was unheralded to the sense of sight or hearing, or any human sense, save that of touch; that it was impossible to determine the presence of this mysterious and powerful agent until too late for self-protection. The evidence at the same time shows, and we know as a matter of common knowledge, that when the electric current is not passing over wires the wires are perfectly harmless, and can be handled as safely as wires on a farm fence or in a hardware store. The evidence in this case shows that appellant was injured about 4 o'clock p. m. on a bright day in the summer time. It shows that the light company had been in business for several years, and that some six months previous to the accident they had put a day current on some of their wires strung on the pole in question; that appellee knew of this fact at the time of appellant's employment, which was about a month preceding the accident, but that appellant had no knowledge that the electric light wires were used in the daytime; that appellee gave to appellant no notice or warning that the light wires were dangerous in the daytime, or that any of them were used by the electric light company in the daytime. We think the evidence justifies the inference that appellant assumed that the light wires were not in use at the time he met with the accident; that, acting upon this assumption, he took no precaution whatever to protect himself from danger of contact with the electric light wires, and carried a bare, grounded wire with him up among them, which, coming in contact with one of the light wires carrying a heavy voltage of electricity, gave him such a shock as caused his fall from the pole and consequent injury. The evidence also disclosed the fact that appellant might have performed the same work without the use of the grounded wire, and without involving

himself in any danger whatever from a shock from the light wires, by opening the cable box on the pole and making his test through it.

The whole question in the case turns upon whether appellant was bound to assume, from the presence of the light wires on the pole, that they were live wires, and use

3. precautions to protect himself accordingly. If he was, then the instructions to the jury complained of were correct, and the admission of the evidence complained of was harmless, and appellant's action, both in taking the bare, grounded wire up among the electric light wires, and his failure to use the safe way of doing the work instead of the one involving the danger, was clearly negligent, and such negligence proximately contributed to his injury. If these are, however, questions not for the court but for the jury to pass upon, then the appellee's contention must fail, and there was error in the instructions of the court, and very manifest error in permitting the witness Harrison to give his opinion as to what a lineman of ordinary experience and caution would undertake to do under the circumstances set forth in the complaint (*Giraudi* v. *Electric Imp. Co.* [1895], 107 Cal. 120, 40 Pac. 108, 28 L. R. A. 596, 48 Am. St. 114; *Bemis* v. *Central Vermont R. Co.* [1886], 58 Vt. 636, 3 Atl. 531; *Dallas Electric Co.* v. *Mitchell* [1903], 33 Tex. Civ. App. 424, 76 S. W. 935), and the jury might have found that appellant had the right to consider, at the time his work was being done, that one way of performing it was equally as safe as the other. If he had the right to assume that the light wires were dead, this would be true. We think this question must be determined against appellee's contention. Whether the appellant was bound to assume, in the absence of actual knowledge, that the light wires were in use in the daytime, was properly a question of fact to be determined by the jury. What inferences were proper to be drawn from all the facts shown by the evidence? The fact that the light wires were present on the pole, attached

in such manner as to indicate that they were to be used to transmit electric currents of dangerous intensity, that such currents were ordinarily used for illuminating purposes, and that the accident happened in the daytime, presented a state of facts from which reasonable men might draw different inferences as to whether the electric light wires were at that particular time dangerous. *Central Union Tel. Co.* v. *Sokola* (1905), 34 Ind. App. 429; *Mahan* v. *Newton, etc., St. R. Co.* (1905), 189 Mass. 1, 75 N. E. 59; *East Tenn. Tel. Co.* v. *Carmine* (1906), 29 Ky. Law 479, 93 S. W. 903; *Snyer* v. *New York, etc., Tel. Co.* (1906), 73 N. J. L. 535, 64 Atl. 122.

In the case of *Mahan* v. *Newton, etc., St. R. Co., supra,* it appeared that the plaintiff's intestate was killed while in the employ of an electric light company, as lineman, by a current of electricity which it was claimed came from the street railroad company's trolley line, which was in close proximity to the light line. The action was brought by the administrator against the street railroad company, and the theory of the complaint was that the defendant was guilty of negligence in not properly guarding its line to prevent the escape of electricity to the light company's lines. A rule of the electric light company required its employes, when engaged in their duties, to treat every wire as a live wire, and to wear rubber gloves in handling dangerous wires. The deceased treated the wires he was handling as dead wires, and did not wear rubber gloves, and it was contended that he was guilty of contributory negligence. There was evidence that the deceased had no reason to believe that the light wires were dangerous. It was held that whether the nonobservance of the rule to treat every wire as a live wire, under the circumstances there shown, was an act of negligence, was a question for the jury.

In the case of *East Tenn. Tel. Co.* v. *Carmine, supra,* the appellee was employed by a telephone company as a lineman. The telephone company and the electric light company

both used the same poles in the city of Paris, Kentucky. Until within a few days before the accident out of which the suit originated, the light company had not been using its lines until after 5 o'clock p.m. It then notified the telephone company that the electric current would be turned onto its wires at 4 o'clock p.m. instead of 5 o'clock. The appellee was directed by the superintendent of the telephone company to do certain work which required the handling of the electric light wires after 4 o'clock p.m. but before 5 o'clock p.m. He had no knowledge of the change in the time of turning on the current of the electric light wires, and no notice of the change was given to him by his employer, and, on the assumption that the light wires were dead and not dangerous, he took them in his hand, and was working with them when the current was turned on, and he was injured. It was held that the company was guilty of gross negligence in its failure to notify appellee of the danger to be apprehended from the light wires at the time he was required to work with them, and that the questions of appellee's contributory negligence and assumption of risk were properly for the jury.

The case of *Snyer* v. *New York, etc., Tel. Co., supra,* is in many respects similar to the case at bar, the only distinction between the cases being in the fact that in the case cited the evidence disclosed that the electric light wires had not formerly been used in the daytime, and that the injured employe was cognizant of such fact. There, as here, the light wires were used in the daytime, and the fact was known to the master and unknown to the servant, and no notice was given by the master to the servant; and there, as here, the servant assumed that the wires were dead and harmless, and, acting upon that assumption, was injured by coming in contact with them in the performance of his work.

It does not appear in the evidence in this case that the appellant had any knowledge or information on the subject as to the time when the electric light wires on the poles were

in use. It was held in the case cited that it was negligence upon the part of the master to fail to give notice and warning to the servant of the danger to be apprehended from the wires at the time his work was required to be done, and that the questions of the assumption of the risk and of contributory negligence from a knowledge of the presence of the wires upon the part of the employe, were properly for the jury.

We think that the distinguishing circumstances between the two cases cannot be controlling.

It is the general rule that the questions whether a given hazard is assumed by the employe, and whether, in a given case, there has been contributory negligence on the part of the party injured, are for the jury, and what are proper inferences to be drawn from the facts appearing in evidence are properly for the jury, and not for the court.

In this case the jury might very properly have inferred, from the fact that the light wires were on the pole, that the appellant knew they were designed to carry electric currents of dangerous energy, and from the subtle and mysterious character of the element, which prevented its presence being known, save by the sense of touch, that the appellant was guilty of contributory negligence in failing to treat the wires as live wires, and dangerous; and that, from his knowledge of the presence of the wires, the risk arising from dangerous currents of electricity that might be passing over them was assumed by him.

But it was error for the court to tell the jury, as it did in instruction twenty-three, that this evidence was conclusive upon it, and that it was bound to draw the inference from the facts, that appellant was guilty of contributory negligence, and that he assumed the risk. This was an invasion of the province of the jury.

Instruction thirteen was also plainly erroneous, in that it omitted the element of appellant's knowledge that one way of

performing the work was more safe than the other.

5. If the light wires were dead, the way in which appellant undertook to do his work was a safe way, and perhaps more convenient than to open the cable box and make the test through it; and if the jury, from the evidence, inferred that the appellant had the right to treat the light wires as not in use, and therefore not dangerous, then it could not be said that he knew that one of the ways of doing the work was any more safe than the other.

In the elaborate brief of counsel for appellant numerous other questions are discussed which will probably not arise upon another trial of the case, and are therefore not considered.

Judgment reversed, with instructions to grant a new trial.