BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY *v.* CARROLL, ADMINISTRATRIX.

[No. 25,346. Filed October 2, 1928. Rehearing denied March 15, 1929.]

*McMullen & McMullen, M. R. Waite, W. A. Eggers* and *Joseph Verbarg,* for appellant.

*Montgomery & Montgomery* and *Harry C. Meloy,* for appellee.

MARTIN, J.—This action was brought on February 20, 1918, in the Jackson Circuit Court by Guerney O. Burtch against the railroad company to recover damages for personal injuries suffered by him on October 24, 1917, as a result of the company's negligence, while he was engaged in assisting to unload a heavy ensilage cutter from a freight train at Commiskey, Indiana.

From a verdict and judgment rendered May 28, 1918, in Burtch's favor in the sum of $8,000, the railroad

company appealed to this court, where the judgment was affirmed March 14, 1922. *Baltimore, etc., R. Co.* v. *Burtch* (1922), 192 Ind. 199, 134 N. E. 858.

Burtch, who was injured because of the breaking of a defective skid, was caught and crushed by the falling ensilage cutter. Three ribs were broken, and paralysis resulted from an injury at the lower part of the dorsal vertebrae. He had no control of his legs, bladder, bowels, and other organs and parts of his body below the waist, was able to sleep only by the aid of hypodermic injections, could do no labor, and required the attention of a nurse. He died from these injuries February 10, 1921, and appellee, his widow, was appointed administratrix of his estate, and was substituted as a party in the proceedings that have followed. (Appellee's name was changed to Carroll by her marriage about three years after Burtch's death.)

On application of the railroad company, the Supreme Court of the United States, by certiorari to this court, reversed the judgment, January 7, 1924, *B. & O. S. W. R. Co.* v. *Burtch* (1924), 263 U. S. 540, 44 Sup. Ct. 165, 68 L. Ed. 433, holding: (1) That uncontradicted evidence established the character of the shipment of the ensilage cutter as interstate; (2) that such evidence prevailed over the special findings and the general verdict; (3) that the unloading of the interstate shipment by the employees of the carrier was so closely related to interstate transportation as to be practically a part of it; and (4) that therefore the case should be governed by the federal Employers' Liability Act (act April 22, 1908, 35 Stat. at L. 65, ch. 149), and the act of 1910 amendatory thereto, (see *infra*) and not by the state law, and, in that view, it should have been submitted to the jury. The court also held (5) that the authority of the conductor of a freight train to employ a bystander to assist in un-

loading heavy freight may be derived from custom and the emergency or exigency of the occasion; and (6) that the liability of an interstate carrier for an accident suffered by a part owner of a heavy article of freight while assisting, as the carrier's employee, in unloading it from the car, was not affected by the existence of a rule filed by the carrier with the Interstate Commerce Commission requiring owners of such articles, under stated conditions, to unload them, since the rule did not affect the relations between the carrier and its employees, but must be observed only to prevent discrimination among shippers, and failure to enforce it was no part of the cause, but was merely an attendant circumstance of the accident.

Pursuant to the mandate of the Supreme Court of the United States, this court reversed the judgment of the Jackson Circuit Court and directed that a new trial be granted. *Baltimore, etc., R. Co.* v. *Burtch* (1924), 194 Ind. 701, 142 N. E. 865. This was done, and on March 5, 1924, the appellee, administratrix, filed her amended complaint in three paragraphs, each praying for damages for the injuries sustained by Burtch in his lifetime and by the appellee, his administratrix, for herself and for their two children, ages three and five years, by his death.

The first paragraph, which did not go to the jury, charges a cause of action under the Indiana Employers' Liability Act, Acts 1911, ch. 88, §9432 *et seq.* Burns 1926, the second is an action at common law, and the third is based upon the federal Employers' Liability Act, *supra.* The appellant filed an answer in four paragraphs—the first a general denial, the second alleging that the cause of action did not accrue within two years next before the commencement of this action,* the third alleging that so

---

*Two years is the limit of time within which such an action may be brought, (1) generally under the Indiana law §302 Burns 1926 (see §307 Burns 1926 as to extension of time in case of death); (2) under the federal Employers' Liability Act, §6, act April 22, 1908, ch. 149, 35 Stat. at L. 66, as amended by act April 5, 1910, ch. 143, 36 Stat. at L. 291; and (3) under the Indiana Employers' Liability Act, §9439 Burns 1926.

much of the cause of action as is based on the death did not accrue within two years, and the fourth alleging that decedent was a part owner of the ensilage cutter and was required to unload the same by a rule of the appellant approved by the Indiana Public Service Commission and the Interstate Commerce Commission. The issues were closed in the Jackson Circuit Court by replies in general denial to the second, third and fourth paragraphs of answer, and the cause was then sent on a change of venue to the Jennings Circuit Court, where a trial by jury resulted in a verdict and judgment for appellee on March 18, 1925, in the sum of $15,000.

The appellant's motion for a new trial was filed April 11, 1925, and overruled June 1, 1925. An appeal to this court was perfected on August 28, 1925, the cause was transferred to the Appellate Court on February 26, 1926, for want of jurisdiction under §1, ch. 201, Acts 1925, §1356 Burns 1926, and retransferred to this court on January 13, 1927, under §15, ch. 247, Acts 1901, §1351 Burns 1926, that court having been unable to arrive at a result concurred in by four of its judges.

Appellant has assigned a number of alleged errors. Some of these have been waived in the preparation of its brief, and some present questions that were settled adversely to appellant on the former appeal. Only two questions of law arise which require discussion here: (1) Is the action (a) for the injury or (b) for the death of Burtch barred by the statute of limitations because the amended complaint thereon was not filed within two years? (2) Are the facts proved such as show as a matter of law an assumption of risk by appellee's decedent which bars a recovery?

Section 293 Burns 1926 provides that in case one who has obtained a judgment for personal injuries, from which there has been an appeal and reversal, dies before a new

trial is had, his claim shall survive and may be prosecuted on behalf of his estate.

By act April 5, 1910, 36 Stat. at L. 291, ch. 143 (which amended act April 22, 1908, by adding thereto §9), it is, provided that any right of action given by the act to a person suffering injury shall survive to his personal representative for the benefit of the widow, children, etc., "but in such cases there shall only be one recovery for the same injury." The effect of this amendment is to permit and require all damages, both to decedent by reason of the injury and to the beneficiaries by reason of the death, to be recovered in one action. 17 C. J. 1187; *Northern Pac. R. Co.* v. *Maerkl* (1912), 198 Fed. 1, 117 C. C. A. 237; *Missouri, etc., R. Co.* v. *Wulf* (1913), 226 U. S. 570, 33 Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B 134, and note; *Kansas City, etc., R. Co.* v. *Leslie* (1915), 238 U. S. 599, 35 Sup. Ct. 844, 59 L. Ed. 1478; *Great Northern R. Co.* v. *Capital Trust Co.* (1916), 242 U. S. 144, 37 Sup. Ct. 41, 61 L. Ed. 208, L. R. A. 1917E 1050; *St. Louis, etc., R. Co.* v. *Craft* (1915), 237 U. S. 648, 35 Sup. Ct. 704, 59 L. Ed. 1160; *Moffett* v. *Baltimore, etc., R. Co.* (1914), 220 Fed. 39, 135 C. C. A. 607; 18 R. C. L. 864; Notes 47 L. R. A. (N. S.) 82; Ann. Cas. 1914C 182.

Where additional or amended paragraphs of complaint are filed after the lapse of the statutory limitation which are founded upon the same transaction as that sued on in the original complaint, and which merely expand or amplify what has already been alleged, they relate back to the commencement of the action at which time the statute of limitations was arrested and they are not affected by the intervening lapse of time. *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 652; *Cleveland, etc., R. Co.* v. *Bergschicker* (1904), 162 Ind. 108, 69 N. E. 1000; *Chicago, etc., R. Co.* v. *Bills* (1889), 118 Ind. 221, 20 N. E. 775.

And an amendment to a complaint alleging that the parties were engaged in interstate commerce but alleging no different state of facts does not introduce a new or different cause of action, and hence may be made although the limitation period had elapsed. *Missouri, etc., R. Co.* v. *Wulf, supra; Curtice* v. *Chicago, etc., R. Co.* (1916), 162 Wis. 421, 156 N. W. 484, L. R. A. 1916D 316, writ of certiorari denied 247 U. S. 510, 38 Sup. Ct. 578, 62 L. Ed. 1242; *New York, etc., R. Co.* v. *Kinney* (1922), 260 U. S. 340, 43 Sup. Ct. 122, 67 L. Ed. 294; *Smith* v. *Atlantic, etc., R. Co.* (1913), 210 Fed. 761; *Wilson* v. *Denver, etc., R. Co.* (1920), 68 Colo. 105, 187 Pac. 1027; 18 R. C. L. 860; Note Ann. Cas. 1914C 1029. It follows that the action for the injury and for the death of Guerney O. Burtch, sued on in appellee's amended complaint, is not barred by either the federal or state statute of limitation.

In some of the cases holding that an amendment to the complaint alleging that the cause of action arose in interstate commerce might be made after the period of statutory limitation has expired, it appears that the court considered that such facts had been imperfectly alleged in the original complaint, *Seaboard, etc., R. Co.* v. *Renn* (1916), 241 U. S. 290, 36 Sup. Ct. 567, 60 L. Ed. 1006, and, from those cases, it might be argued that an amendment alleging the interstate nature of the action could not be made in the entire absence in the original complaint of facts showing the same. But, from the later cases, cited above, it is clear that such an amendment is permitted even though there is nothing in the original complaint to show whether the action arose from an interstate or an intrastate transaction.

Moreover, in the case at bar, the United States Supreme Court has held that Burtch's injuries were sustained in interstate commerce, has determined that "in that view it should have been submitted to the jury,"

and remanded the cause for a new trial for that purpose. That court decided the former appeal more than two years after the cause of action for Burtch's injuries.arose and was advised as to the length of time provided by statute as the limitation within which an action for the same could be brought, as well as to the date of the injury and death, and we cannot presume that the court would have remanded the cause for a new trial, if at that time it was impossible under the law to amend the complaint so that it could be submitted to the jury as directed by the court.

Burtch and several other bystanders, in pursuance of a proved custom of the railroad company, were employed by its train conductor to assist him and three brakemen in unloading the ensilage cutter, which article of freight weighed about a ton. The train was standing on a side track. West of this side track was the main track and west of the main track was the regular depot brick platform. East of the side track was a loading or station track. The regular barrel skids the company had there for unloading freight were not long enough to reach from the train over the main track to the depot platform or over the loading track to the ground. If the train had been placed on the main track, they would have reached to the depot platform or if the train had been placed on the loading track, they would have reached to the ground.

The conductor, Jackson, proceeded to unload the ensilage cutter over the loading track to the ground. At his direction, Burtch and another (Arbuckle) procured from a nearby lumber yard pieces of lumber or planks to be used as skids upon which to slide the ensilage cutter from the freight car across the loading track to the ground.

The jury, in answer to interrogatories propounded to them at appellant's request, among other facts found

(13)** that the injury was caused by the breaking of a plank on which the ensilage cutter was being unloaded from the freight car; (14, 41) that the planks were brought from a sawmill about sixty feet away by Burtch and Arbuckle; (16, 17) that the planks were freshly-sawed poplar two or three inches thick, six inches wide, and twelve or fourteen feet long; (18, 19) that they were not selected by Burtch and Arbuckle, but were selected by Ed. Jackson, the conductor; (20, 21, 44) that neither of the planks showed defects apparent at any time to Burtch or Arbuckle; (23, 24, 25, 45, 46) that the defect which caused the plank to break was a knot, that it could not have been discovered by the use of ordinary care by Burtch and Arbuckle, at the saw-mill or on the way to the car, but was apparent if the plank had been properly examined; (25, 38) that the defect could not have been discovered by the naked eye, and that Burtch was prevented from discovering the defect, as it was not visible to him while performing his work; (64) that Burtch did not have as good an opportunity to see, examine and know of the timbers as the defendant or any of its employees (Jackson); (65) that the defect was such as could have been discovered by the use of ordinary care by Jackson, as overseer, but not such as could have been discovered by the use of ordinary care by the workmen, Burtch and Arbuckle; (67) that Burtch was a farmer but wasn't a judge of timber or a mover of heavy machinery.

There was evidence that Jackson's examination of the planks to ascertain if they were sound or otherwise strong enough to support the machine consisted in his looking at them and that he "kind of tested them and worked his foot up and down to see," and he said they would hold it up, and there was other evidence which

* *These figures refer to numbered instructions.

reasonably justified the conclusions stated by the jury in the answers to the interrogatories.

The federal Employers' Liability Act, *supra,* relating to the liability of common carriers by railroad to their employees suffering injuries while engaged in interstate commerce, abrogates the common-law rule under which the negligence of a fellow servant is a bar to recovery, *Second Employers' Liability Cases (Mondou v. N. Y., etc., R. Co.* [1912], 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. [N. S.] 44); its effect being to make the negligence of a fellow servant the negligence of the employer, *Pa. R. Co.* v. *Goughnour* (1913), 208 Fed. 961, 126 C. C. A. 39; *Skaggs* v. *Illinois Central R. Co.* (1914), 124 Minn. 503, 145 N. W. 381; *Id.,* 125 Minn. 532, 147 N. W. 1135, affirmed 240 U. S. 66, 36 Sup. Ct. 249, 60 L. Ed. 528.

It eliminates contributory negligence as a bar to recovery by providing as a rule of comparative negligence that damages shall be diminished by the jury in proportion to the amount of negligence proximately attributable to the injured employee, *Cain* v. *Southern R. Co.* (1911), 199 Fed. 211, 213; *Seaboard, etc., R. Co.* v. *Tilghman* (1915), 237 U. S. 499, 35 Sup. Ct. 653, 59 L. Ed. 1069, and eliminates entirely the defense of contributory negligence in cases where the violation by the carrier of any (federal) statute enacted for the safety of employees proximately contributed to the injury, §§63, 64 Richey, Federal Employers' Liability (2d ed.) It does not, however, change the rule that an employee shall be held to have assumed the risk of his employment, except where there is a violation by the carrier of a (federal) statute enacted for the safety of employees that proximately contributed to the injury or death of such employee, *Seaboard, etc., R. Co.* v. *Horton* (1914), 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C 1, Ann. Cas. 1915B 475;

*Seaboard, etc., R. Co.* v. *Horton* (1916), 239 U. S. 595, 36 Sup. Ct. 180, 60 L. Ed. 458.

The risk of his employment that the employee assumes is the ordinary, usual, obvious and unavoidable dangers and perils naturally incident thereto, so far as these are not attributable to the employer's negligence, *Gila Valley, etc. R. Co.* v. *Hall* (1914), 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; §72 Richey, *supra.* The defense of assumption of risk, like that of contributory negligence, is based upon the knowledge of and appreciation by the servant of the danger causing the accident, 18 R. C. L. 683; and knowledge is presumed as regards the usual and ordinary risks.

The risk resulting from the negligence of the employer will also be assumed by the employee when, with knowledge thereof and appreciation of the danger resulting therefrom, he continues his employment without objection and is thereafter injured by reason of such negligence, *Seaboard, etc., R. Co.* v. *Horton, supra;* §73 Richey, *supra;* and knowledge of the negligent conduct and resulting danger will be presumed when such conduct and danger are so patent, open, obvious or apparent that an ordinarily-careful person under the circumstances would observe and appreciate them. *Chicago, etc., R. Co.* v. *Ward* (1920), 252 U. S. 18, 40 Sup. Ct. 275, 64 L. Ed. 430; *Mich., etc., R. Co.* v. *Shaffer* (1915), 220 Fed. 809. But if the employee had no notice or knowledge of the peril, or, by the exercise of reasonable and ordinary care, he could not have known of it, he cannot be held to have assumed the risk.

In saving the defense of assumption of risk, the act places a co-employee's negligence in the same relation as the employer's own negligence would stand to the question whether a plaintiff is to be deemed to have assumed the risk. *Chesapeake, etc., R. Co.* v. *DeAtley* (1916), 241 U. S. 310, 36 Sup. Ct. 564,

60 L. Ed. 1016; and when the injury arises from a single act of negligence creating a sudden emergency without warning to the servant or opportunity to judge of the resulting danger, the defense of assumed risk is inapplicable. *Chicago, etc., R. Co.* v. *Ward, supra; Texarkana, etc., R. Co.* v. *Casey* (1914), 172 S. W. (Tex. Civ. App.) 729.

The employee cannot be held to have assumed the risk of a defect in an appliance unless he knew of the defect and knew that it endangered his safety, and ██ of which defect the employer knew or for which he was responsible. *Choctaw, etc., R. Co.* v. *McDade* (1903), 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; *Gila Valley, etc., R. Co.* v. *Hall, supra; Yazoo, etc., R. Co.* v. *Wright* (1914), 235 U. S. 376, 35 Sup. Ct. 130, 59 L. Ed. 277; *Central Vermont, etc., R. Co.* v. *White* (1915), 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433. And an employee is not required to search for defects or critically inspect the appliances furnished to him, *Chesapeake, etc., R. Co.* v. *DeAtley, supra.*

In *Seaboard, etc., R. Co.* v. *Horton, supra,* the court, after pointing out the distinction between contributory negligence and assumption of risk, said:

"But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."

And in *Chesapeake, etc., R. Co.* v. *DeAtley, supra,* the court, citing *Gila Valley, etc., R. Co.* v. *Hall, supra,* and *Seaboard, etc., R. Co.* v. *Horton, supra,* said:

"According to our decisions, the settled rule is not that it is the duty of an employee to exercise care

to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

In the case at bar, as in *Smith* v. *Railroad Co.* (1920), 108 Kans. 151, 194 Pac. 318, where a railroad bridge carpenter was injured by the fall of a scaffold due to the breaking of a needle beam containing a knot, it cannot be said, as a matter of law, either that the danger was so obvious that the plaintiff must have known of it or that it was so remote that the defendant could not be charged with knowledge of it; both such questions were for the jury.

Assumption of risk is a substantive issue, but the procedure is the established procedure prevailing in the courts of this state. By the settled procedure of Indiana, whether the deceased assumed the risk of being injured, in view of all the circumstances of the case, is a question for the jury under proper instructions. *Pennsylvania Co.* v. *Stalker, Admx.* (1918), 67 Ind. App. 329, 119 N. E. 163; *Ambre* v. *Postal, etc., Co.* (1909), 43 Ind. App. 47, 86 N. E. 871; *Rogers* v. *Leyden* (1891), 127 Ind. 50, 26 N. E. 210; *Annadall* v. *Union Cement Co.* (1905), 165 Ind. 110, 74 N. E. 893; *Riley* v. *Neptune* (1914), 181 Ind. 228, 103 N. E. 406; *Cleveland, etc., R. Co.* v. *Bellange* (1922), 78 Ind. App. 36, 135 N. E. 367.

On conflicting evidence the question of assumed risk is for the jury, *Chesapeake, etc., R. Co.* v. *DeAtley, supra; Central Vermont, etc., R. Co.* v. *White, supra; Gila Valley, etc., R. Co.* v. *Hall, supra; McGovern* v. *Philadelphia, etc., R. Co.* (1914), 235 U. S. 389,

35 Sup. Ct. 127, 59 Law Ed. 283; *Kanawha, etc., R. Co.* v. *Kerse* (1916), 239 U. S. 576, 36 Sup. Ct. 174, 60 L. Ed. 448, and the trial court is bound to submit the case to the jury unless a recovery is impossible upon any view that can possibly be taken of the evidence, §75 Richey, *supra*. So, questions in any particular case, of whether a defect or danger was obvious or whether the employee had knowledge of the peril, or in the exercise of due care would have had knowledge, are for the jury. *Chesapeake etc., R. Co.* v. *DeAtley, supra; Choctaw, etc., R. Co.* v. *Jones* (1906), 77 Ark. 367, 92 S. W. 244, 7 Ann. Cas. 430, 4 L. R. A. (N. S.) 837; 18 R. C. L. 685. It is only where the uncontroverted evidence discloses the fact that the danger was apparent to an ordinarily-prudent person, and that the services were thereafter rendered without complaint, that the defense of assumption of risk is so conclusively established that there is no question for the jury, §75 Richey, *supra*.

The evidence in the case at bar does not conclusively show, nor does it show at all, that the risk of injury was the ordinary and usual risk and peril incident to decedent's employment. There is evidence to show that the risk was extraordinary, in the sense in which that word has been used in the cases, and arose out of the negligence of the employer's conductor, was unknown to appellant, and was not a risk which he was bound to appreciate, or take notice of. It was, therefore, under proper instructions, a question for the jury.

The jury was instructed at length upon the law governing the assumption of risk (the court giving all of the instructions tendered by appellant upon that subject), and it was likewise fully and correctly instructed on the other questions of law discussed above.

No error appearing in the record, the judgment is affirmed.

Myers, J., concurs in the conclusion.