IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY AND NOVEMBER TERMS, 1903, IN
THE EIGHTY-SEVENTH AND EIGHTY-EIGHTH
YEARS OF THE STATE.

---

## BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY v. ROBERTS.

[No. 20,036. Filed May 26, 1903.]

MASTER AND SERVANT.—*Personal Injuries.—Complaint.—Knowledge of Danger.*—A complaint by an employe for personal injuries which discloses a want of knowledge or notice on the párt of the employe of the defects or danger to which the injury complained of is attributed is sufficient without an avermént that the employe had no means or opportunity of ascertaining or discovering such defects or danger. *pp. 6, 7.*

APPEAL AND ERROR.—*Harmless Error.*—If a verdict for plaintiff in an action for personal injuries can be upheld upon the first paragraph of the complaint, defendant can not be said to have been injured because the jury also found in favor of plaintiff on the second paragraph, and alleged errors affecting only a recovery upon the latter paragraph would be harmless. *pp. 7, 8.*

NEGLIGENCE.—*Master and Servant.—Railroads.*—In an action by a freight brakeman for personal injuries caused by the alleged negligence of defendant in maintaining its tracks in such close proximity to each other and in leaving a car loaded with lumber standing on one of its tracks which struck plaintiff as he passed on a car in the line of his duty, the negligence of defendant was properly submitted to the jury, and a verdict for plaintiff will not be set aside where there was evidence in support of it. *pp. 9–13.*

MASTER AND SERVANT.—*Assumption of Risk.*—A yard switchman, in the absence of knowledge to the contrary, is not in duty bound to go upon a search and ascertain by measurements or otherwise whether the tracks were so close together as to render them unsafe for the operation of cars thereover; since he had the right, unless admonished to the contrary, to assume that the tracks were a reasonably safe distance from each other, and to act upon that assumption. *pp. 13, 14.*

RAILROADS.—*Book of Rules as Evidence.*—The rules adopted by a railroad company for the management and control of its business, when they tend to sustain any issuable fact in a case on trial, are competent evidence either for or against the railroad company. *pp. 14, 15.*

From Daviess Circuit Court; *H. Q. Houghton,* Judge.

Action by Edward M. Roberts against the Baltimore & Ohio Southwestern Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*W. R. Gardiner, C. G. Gardiner, T. D. Slimp* and *Edward Barton,* for appellant.

*C. K. Tharp* and *P. H. Cullen,* for appellee.

JORDAN, J.—Action by appellee against appellant for personal injuries sustained through the negligence of the latter while in its employ as a switchman.

The complaint is in two paragraphs, to each of which a demurrer for insufficiency of facts was overruled. There was a trial by jury, and a verdict returned finding expressly in favor of plaintiff on both the first and second paragraphs of his complaint, and damages were assessed in the sum of $3,000, and, over appellant's motion for a new trial, judgment was rendered for that amount.

The errors assigned are based on overruling the demurrer to each paragraph of the complaint and in denying the motion for a new trial.

The facts as averred in the first paragraph of the complaint show that appellant is a railroad corporation operating a railroad which runs through the city of Washington,

Daviess county, Indiana, and it owns and operates shops, turntables, switch yards, etc., at said city. Its switch yards therein constitute the terminus of its freight division, and in this yard its engines and other rolling stock are changed, inspected, overhauled, and repaired. For the purpose of conducting its business appellant constructed and maintained a large number of railroad tracks, switches, and spurs within its said switch yard, and had in its employment in and about the said switch yard a large number of men, whose duty it was to couple and uncouple cars and switch them in said yard. Its railroad runs in an east and west direction through said city, and its switch yard is located north of its main track. Near the southwest corner of said switch yard a side-track is turned from the main track, and runs in a northwest direction through the yard to the roundhouse situated near the center of the switch grounds, and this track is known and called the "cinder track." From near the east end of the last-mentioned track there are turned in regular order five other switch or spur tracks leading off in a northwest direction through the yards. These tracks are known and numbered as follows: The first and most eastern track is called the "chippy track," or track twenty-five; the next tracks are known in numbers as twenty-four, twenty-three, twenty-two, and twenty-one. In the construction of said tracks—especially said "chippy track" (being track twenty-five) and track twenty-four, which is next to and immediately west of the latter track twenty-five—it was the duty of appellant so to construct them that cars upon either of said tracks could safely pass the cars upon the other, and so to construct them that switchmen and brakemen in the discharge of their duties of switching and riding cars about said yard could safely ride in the stirrup, ladders, and appliances supplied for that purpose on the box cars to be switched and hauled about said yard, and so to construct them that the switchmen and brakemen in discharge of their duties could be safely carried in the

stirrup and ladders of the cars upon one of said tracks by and past the cars upon the other of said tracks. Appellant utterly failed so to construct said tracks that a switchman riding in the stirrups and ladders of the cars upon one of the said tracks could be safely carried past cars standing upon the other of said tracks, but, on the contrary, the appellant carelessly and negligently constructed and maintained said tracks so close together, and so irregular in points of distance between said tracks, that a switchman riding in the stirrups and ladders of the cars upon one of said tracks could and would come in contact with the cars upon the other of said tracks. It is shown that appellee is thirty-one years of age, and prior to the commission of the grievance complained of he was a man of good physical health and strength, and prior to the month of November, 1900, he had never engaged in any kind of work for railroads, and had no experience whatever in working in railroad shops or yards as a switchman, brakeman, or otherwise. About the middle of November, 1900, appellant employed appellee to work in its said yards as a switchman. As such employe it became and was his duty to couple and uncouple cars in said yard, and when they were to be switched from one track in the yard to another it became and was his duty to stand in the stirrups and ladders of the cars, and ride thereon, and be carried in this way from one part of the yard to wherever it was desired to carry and locate the car or cars. On the 4th day of December, 1900, appellant, in the transaction of its business in said switch yard, directed that a coal car which was standing upon one of the spur-tracks be switched therefrom and hauled around on the said "chippy track," and, as a switchman for appellant, it became and was the duty of appellee to uncouple said car from the cars to which it was attached and to couple the same to the engine which was to haul it from the spur-track to the "chippy track;" and likewise it was his duty, after the engine had hauled the car to the switch where it was

transferred to the "chippy track," to take a position in the stirrups on the car, and to ride thereon as it was being hauled on said "chippy track" to the place where it was intended to locate said car. In the discharge of his duty appellee boarded said car by putting his foot in the stirrup thereof as the same was being hauled by the engine to said "chippy track;" that immediately after he had boarded said car, and before he had time to discover the close and dangerous proximity of a car loaded with lumber, which was standing on track twenty-four, and while he was being carried on said car in that position, his face, head, and body, and other portions of his person came in sudden and violent contact and collision with the said car loaded with lumber standing on said track twenty-four, and by reason thereof he was hit, struck, and knocked from his position on the said coal car to the ground, and under the wheels of said car; that by reason of the collision with the timbers of said lumber car great gashes were cut in his face and scalp, and he was knocked to the ground by the force of said collision, and his arm, wrist, and hand were run over by the wheels of said coal car, and were bruised and mangled, and his fingers were cut off; that said injuries so received have permanently scarred, disfigured, and injured his face and skull, and likewise his arm, wrist, and hand are permanently scarred, disfigured, and injured. Appellee had no knowledge at and previous to the time of said accident that the said tracks were constructed at such dangerous and close proximity to each other as to make it unsafe to engage in the business that he was engaged in at the time of the accident and to ride in the stirrups and ladders of the cars that were being switched about said yard. He had no knowledge whatever of the close and dangerous proximity of the said lumber car standing on track twenty-four to the coal car passing on the said "chippy track." In boarding the coal car as he did when it approached him, his attention and vision at the time were required to be directed

towards said coal car, and away from said lumber car, which was standing on track twenty-four; and after he had taken his position in the stirrups of the coal car, and before he had time or opportunity to ascertain the close proximity of the said lumber car on track twenty-four, the car upon which he was riding at the time, and before he had time or opportunity to observe or realize and know that the timber of said lumber car would strike him, he was struck thereby, and injured as aforesaid; that he was injured as aforesaid solely because of the carelessness and negligence of the appellant in suffering and permitting the said lumber car to be so near the car upon which he was riding that he could not be safely carried by the same, and by the carelessness and negligence of appellant in not providing a safe place in which the plaintiff could discharge his duties, and without any fault on his part contributing to the said injury; that by reason of the said injury he has sustained damages, etc.

As advised by appellant's brief, the second paragraph of the complaint is based upon or proceeds upon the theory that appellant is liable under the employer's liability act of 1893, by reason of the negligence of its yard master in charge of the switch yard in placing a car of lumber at a point on track twenty-four, where the two tracks are so close together that a switchman riding in the stirrups of a car passing over track twenty-five would collide with said lumber car.

The only objection urged by counsel for appellant to the sufficiency of the first paragraph of the complaint is that it fails to aver or show that appellee had no opportunity to know all about the tracks in controversy. Counsel, in presenting this objection, say: "The first paragraph of the complaint is predicated upon the theory that the appellant was negligent in constructing tracks too close together in its yard; that because of that fact the loaded car of ties was so close to the track next to the one on which

it stood that appellee could not safely pass it on the next track while riding on the side of the coal car, and therefore he was not provided with a safe place within which to perform his work. In this paragraph an open yard with several tracks is described, and, while it is averred that the appellee did not know of the close proximity of the tracks, and that he was without fault, it is not averred that he had not opportunity to know all about them."

The alleged infirmity in the paragraph in question, as pointed out by appellant's counsel, does not render the pleading bad. In a suit by an employe for an injury sustained because of the negligence of the master, the complaint in an ordinary common law action must disclose an absence or want of knowledge or notice on the part of the employe of the defects or danger to which the injury complained of is attributed. The pleading is not required to go further and aver facts affirmatively showing that the employe had no means or opportunity of ascertaining or discovering the defects or danger in controversy. An averment that he did not know of such defects or danger is sufficient as a matter of pleading to rebut or repel not only actual knowledge, but also implied or constructive knowledge or notice. *Consolidated Stone Co.* v. *Summit,* 152 Ind. 297; *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156; *Peerless Stone Co.* v. *Wray,* 143 Ind. 574; *Ohio, etc., R. Co.* v. *Pearcy,* 128 Ind. 197; *Chicago, etc., R. Co.* v. *Richards,* 28 Ind. App. 46. As the alleged deficiency urged by appellant is the only attack made upon the first paragraph of the complaint, consequently we have not further examined the pleading in order to discover other defects therein.

It is next insisted that the evidence does not sustain the verdict of the jury; that it is contrary to law; that the court erred in giving and refusing certain instructions, and in admitting certain evidence. In reviewing the questions presented by appellant, we may first investigate in order to ascertain as to whether the judgment, so far as it can

be said to rest upon the first paragraph of the complaint, is impressed with reversible error, for, as shown, the jury found in favor of the plaintiff upon both the first and second paragraphs; hence, under the circumstances, if the recovery can be properly upheld upon the first paragraph of the complaint, appellant can not be said to have been injured because the jury also found in favor of appellee on the second paragraph, and the alleged errors which may affect only a recovery upon the latter paragraph would be harmless. Each of the paragraphs was independent of the other, and if the finding of the jury as to the first can be sustained, the judgment will not be reversed upon the ground alone that error can be successfully imputed on the finding of the jury on the second paragraph of the complaint. *Putt v. Putt,* 149 Ind. 30, and authorities there cited.

That as between the master and his servant it is the duty of the former to exercise reasonable care to furnish and maintain a safe place for the servant to work, and also safe machinery and appliances with which to discharge the duties of his employment, is a well settled proposition. Such duty is a continuing one which the master can not delegate to another and thereby escape responsibility for the neglect thereof. The servant, in the absence of any knowledge or notice to the contrary, has a right to rely upon the assumption that the master has discharged the duty enjoined upon him by law, and within reasonable limits he may act upon such assumption; but the law exacts of him the duty to use the faculties or senses with which he is endowed in ascertaining whether danger or peril actually exists, where the same is patent or open to view. But, in the absence of apparent or known defects, danger, or peril, he is not required to search in order to ascertain whether the place in which he works is safe or unsafe, or the machinery or appliances with which he discharges the duties of his employment are safe, for, as previously said, in the absence of any knowledge to the contrary, he is jus-

tified in assuming that the master has discharged his required duty. It is equally well settled that an employe assumes all of the risks incident to the employment into which he enters. In support of the propositions herein asserted, see *Rogers* v. *Leyden,* 127 Ind. 50, and cases there cited, and *Indiana, etc., R. Co.* v. *Snyder,* 140 Ind. 647. The foregoing principles or propositions are so well recognized and so well settled by repeated decisions of this court that further citation of authorities is needless.

It is insisted by appellant's counsel that the evidence discloses that appellee assumed the hazard of being injured in the manner in which he was, and therefore the verdict of the jury is contrary to the law, and the court erred in refusing to direct the jury, as requested by appellant, to find in its favor. Various reasons are also assigned to support appellant's contention that the evidence does not support the verdict of the jury. The evidence, as usual, is conflicting in part, but there is evidence to establish, among other facts, the following: Appellee at the time he was injured was thirty-one years of age, a strong and healthy man, and was earning $2 per day, and previous to his employment by appellant he had no experience as a switchman or otherwise in the service of a railroad company. He applied to appellant's superintendent about November 1, 1900, for employment and was employed as a switchman to work in and about the company's switch yard at the city of Washington, Daviess county, Indiana. Prior, however, to his being actually employed for wages, he was required to work on probation for about two weeks in and about the switch yard in question, and to learn the situation of the several tracks therein, and familiarize himself with the manner of coupling and uncoupling cars and the switching thereof. Appellee seems to have gone through the yards, and learned the names of the several tracks and the methods of doing the work for which he was engaged. The accident by which he was injured occurred on December 4, 1900,

and previous thereto he had been switching for appellant in its yards about fourteen and one-half days. The duties of a switchman, together with other employes composing the engine crew, were to move cars in the yard from one track to another, couple and uncouple them, etc. The engine crew was composed of an engineer, fireman, foreman, and two switchmen. One of the latter was known as the engine switchman and the other the field switchman, who usually worked in what is known in railroad parlance as the "field," and when a car is "kicked" onto a track the field switchman boards it and rides thereon until he stops it at the point where it is to be placed. He also couples and uncouples cars when necessary. The switchmen belonging to a crew are under the orders of the foreman thereof, and the foreman receives his orders each morning from the yard master in charge of the yards in regard to the work that his respective crew is to perform during the day. In the switch yard where appellee was at work when injured there was what is known as a "cinder track." The latter runs east and west, and there are five other tracks leading off from the "cinder track" on curved or parallel lines. These five tracks are numbered from twenty-one to twenty-five inclusive. Track twenty-five is also known as the "chippy track." There were about seventeen different tracks altogether in the switch yard. The shop yard is one-half mile long from east to west and forty rods wide from north to south. Appellee testified that he had never passed along between tracks twenty-four and twenty-five when cars were standing on both these tracks, and had never noticed or observed the distance between them. He further testified that a car on track twenty-five, such as he was riding upon when injured, would pass clear of a car on track twenty-four by from ten to twelve inches, but he stated he was not aware of that fact until after the injury in question. William Foster was foreman of the crew with which appellee worked, and John Blinds was the engine switchman, and appellee

was serving as a field switchman. About 2 o'clock p. m. on December 4, 1900, appellee's crew got some four cars at a point in the switch yard, among which was a steel coal car which was wider than an ordinary car. This coal car, as were also the other cars in the yard, was provided with stirrups and handholds near the end thereof for switchmen to stand upon and hold onto when riding the car from one point to another in the yard. The steel coal car in question, on the day of the accident, was loaded with coal, and immediately previous to the accident appellee's crew was endeavoring to place this car of coal at the machine shops. In preparing to move it to that point, the car next to it in the train was uncoupled or cut off, and the remainder of the cars were "kicked" onto track twenty-two or twenty-three. Tracks twenty-four, twenty-three, and twenty-two were all southwest of track twenty-five in the order named. Appellee, in the discharge of his duty as a field switchman, rode the cut of cars into either track twenty-two or twenty-three, and then stopped them at the proper place. While performing this duty, the remainder of the crew backed the coal car out onto the cinder track, and ran it east to the point where track twenty-five turned off of the cinder track. When the coal car entered upon track twenty-five it started along the track at a rapid rate of speed, and, by the time appellee had stopped the cars upon which he was riding, the engine and coal car were rapidly approaching, and he hastened from the point where he was, in a northeast direction across tracks twenty-three and twenty-four to track twenty-five, in order to intercept and board the coal car. When he reached track twenty-five, the coal car was rapidly moving thereon, and he, in the discharge of his duty, boarded it by putting his foot in the stirrups at the front end and catching with his hands the handhold on the car. Blinds, the engine switchman, was in the stirrup of the car on the northwest corner thereof, and Foster, the foreman of the crew, was on top of the car near the center.

Foster and Blinds were both facing the northwest—that being the direction in which the car was running. It was the duty of appellee, as field switchman, to stay at the front end of the car in question, and not upon the platform at the rear of the engine attached to the car. After appellee boarded the coal car, it ran past another car loaded with lumber or ties, which was standing on track twenty-four, and appellee in an instant, or, employing his own words, "as quick as you could snap your finger," collided with the ties or lumber upon the car on track twenty-four. Previous to the time of the collision he had not observed or noticed this lumber car standing on track twenty-four, and the collision was so sudden and unexpected by him that he was afforded no time or means for escape. By the collision in question, and as a result thereof, he was seriously injured, receiving a long gash or cut upon his head, the gash upon his head being about ten inches in length. He was knocked backward off the coal car, and either the car or the engine attached thereto ran over his hand and mashed his fingers, and by reason thereof several of his fingers were amputated. His hand and wrist were otherwise injured, and have been rendered so weak and feeble as to be virtually useless. The injury which he received on the head is shown still to affect him, there being a dull feeling on the part of the head where he was struck, which possibly will be permanent. The fact that he was seriously injured by reason of the collision is fully established by the evidence. The injury in question caused him to be confined to his room for several days. After he was able to leave his room and walk around, he went over to the switch yard where he had been injured, and examined the condition of the tracks. While he made no measurements of the distance between tracks twenty-four and twenty-five, he estimated by an inspection thereof that the southwest rail of track twenty-five and the northeast rail of track twenty-four were about five and one-half or six feet apart. He also observed

that the south rail of track twenty-four was a little higher than the north rail. The coal car upon which he was riding when injured would clear the lumber car standing on track twenty-four from ten to twelve inches, but he had no knowledge of this fact prior to his injury. Before the accident he did not know how wide apart the tracks in question were. The coal car was running at a rapid rate of speed at the time appellee was injured. Foster, the foreman of the engine crew, testified in behalf of appellant that he had cautioned the appellee several times before the accident that tracks twenty-four and twenty-five would not clear, but appellee upon the witness-stand denied or contradicted this evidence, and testified that Foster, the foreman, had never told him anything in respect to tracks twenty-four and twenty-five being too close together, or that it was dangerous to ride on the inner side of a car passing on track twenty-four or twenty-five. There is evidence to show fully that appellee at the time he sustained the injury was in the line of his duty, and that he in no manner contributed to his said injury. There is evidence, in addition to what we have summed up, to sustain the facts averred in the first paragraph of the complaint. It is clearly established, we think, that the negligence imputed to appellant under the first paragraph of the complaint was the sole and proximate cause of the injury sustained by appellee.

The alleged negligence of appellant in constructing and maintaining the tracks in controversy in such close proximity to each other, and in leaving, under the circumstances, the car loaded with lumber standing on track twenty-four, was a question for the jury, and the latter, under its verdict, determined that question adversely to appellant. In the following cases the facts, at least in some respects, were quite similar to those in this appeal, and the decisions of the court therein fully affirm under the facts in this appeal appellee's right to a recovery. *Johnston* v. *Oregon, etc., R. Co.*, 23 Or. 94, 31 Pac. 283; *Illinois Cent. R. Co.* v.

*Welch,* 52 Ill. 183, 4 Am. Rep. 593; *Colf* v. *Chicago, etc., R. Co.,* 87 Wis. 273, 58 N. W. 408.

In the Oregon case above cited the court said: "The servant is expected to observe such objects only, in the absence of notice, as would in an instant convince him of their danger. It is not expected of a switchman that he should carefully measure the distance between a switch target and the rail. This is the duty of the master; and the servant has the right to assume that the target or other obstruction is at a reasonably safe distance, in the absence of anything to excite special apprehension of danger: *Whalen* v. *R. R. Co.,* 16 Ill. App. 323; and if he knew that the target was but four feet from the track, he might then not be aware of the imminent danger. 'One may know the facts and yet not understand the risk.' " So it may be said in regard to appellee, for, in the absence of knowledge to the contrary, he was not in duty bound to go upon a search and ascertain by measurements or otherwise whether the tracks in controversy were so close to each other as to render them unsafe for the operation of cars by the servants of appellant thereover. He had the right, unless admonished to the contrary, to assume that the tracks were a reasonably safe distance from each other, and to act upon that assumption.

It is shown by the evidence given by appellee that a book containing the rules of the company relating to the duties of its yard masters was given to him by the yard master in charge of the switch yard at the time he entered the services of appellant. These rules were introduced in evidence by appellee. They showed that the yard master of the company had charge of the yards where trains are made up and of the men therein employed, and that it is the duty of such yard master to attend to the making up and the proper arrangement of trains, etc. Appellant objected to the introduction of these rules upon the ground that they did not tend to sustain any of the issues in the

case. It may be said, however, that they do at least tend to show the duties with which the yard master is charged and invested by appellant, and were therefore competent under the issues in the case to be admitted in evidence. The rules adopted by a railroad company for the management and control of its business, when they tend to sustain any issuable fact in a case on trial, are competent evidence either for or against the railroad company. *Terre Haute, etc., R. Co.* v. *Becker,* 146 Ind. 202. There was no error in admitting the rules in dispute.

There can be no doubt but what the evidence in the case at bar establishes culpable negligence on the part of appellant in respect to the safety of the premises in which appellee was required to work, and a recovery upon the first paragraph of the complaint is fully warranted thereby.

Appellant's contention that appellee is shown by the evidence to have assumed the hazard due to appellant's negligence is not sustained. Neither is the claim that the facts establish that he was guilty of contributory negligence.

Complaint is also made by counsel for appellant that the court committed reversible error in giving and in refusing certain instructions. We can not disturb the judgment upon instructions either given or refused. The jury apparently was very fully advised in regard to both sides of the questions involved, and some twelve instructions were given at the request of appellant, and, when these are considered in connection with those given in its favor by the court on its own motion, it can be truly said that every feature, phase, and theory of appellant's side of the case for which it in any manner can contend that there is evidence to sustain were fully covered. In fact, the instructions, considered as a whole, are quite favorable to appellant. The rule is settled beyond controversy that instructions in a case must be considered as a whole, and not entirely separate or in dissected parts; and if, when so considered,

they can be said to state the law correctly, the judgment will not be reversed.

Some of the charges about which complaint is made were expressly limited by the court to the second paragraph of the complaint, and inasmuch as the verdict of the jury can be sustained upon the first paragraph of the pleading, therefore, such particular instructions, even if they can be said ,to be erroneous, under the circumstances afford no grounds for a reversal. Considering the character and permanency of appellee's injury we would not be justified in disturbing the verdict upon the claim made by appellant that the damages are excessive.

Finding no available error, the judgment is affirmed.