NEW YORK CENTRAL RAILROAD COMPANY *v.*
VERPLEATSE ET AL.

[No. 17,290.   Filed March 20, 1945.   Rehearing Denied May 4,
1945.   Transfer Denied June 4, 1945.] .

2

4

*Beasley, O'Brien, Lewis & Beasley,* of Terre Haute, and *Rawley & Stewart,* of Brazil, *S. W. Baxter* and *C. P. Stewart,* both of Cincinnati, Ohio, of counsel,, for appellant.

*Bauer & Kincade,* of Terre Haute, and *Craig & Craig,* of Brazil, for appellees.

DRAPER, C. J.—The appellee, a section-hand employed by the appellant, brought this action under the Federal Employers Liability Act against the appellant and the appellee Cecil Graham, a fellow employee who was the engineer operating the involved engine.

The jury returned a general verdict as follows:

"We, the Jury, find for the plaintiff and against the defendant, New York Central Railroad Company, and assess plaintiff's damages at $25,000.00; and we find for the defendant, Cecil Graham."

Interrogatories were submitted and answered by the jury as follows:

"Interrogatory No. 1: Did the accident happen about 10 o'clock in the morning of August 24, 1943?
"Answer: Yes.

"Interrogatory No. 2: Was August 24, 1943, at the time of the accident, a clear, sunshiny day?
"Answer: Yes.

"Interrogatory No. 3: Was the involved engine immediately before the accident, backing east-wardly from 25th Street on the lead track?
"Answer: Yes.

"Interrogatory No. 4: Was the involved engine traveling at a speed of approximately one or two miles per hour as it backed from 25th Street east toward the place of the accident?
"Answer: Yes.

"Interrogatory No. 5: After passing 25th Street, was there anything to obstruct plaintiff's view of the involved engine as it was backing toward the place of the accident?
"Answer: No.

"Interrogatory No. 6: Was the whistle on the engine sounded as it approached and entered upon 25th Street?
"Answer: Yes as it approached but not as it entered 25th Street.

"Interrogatory No. 7: Was the bell on the engine ringing as it approached and passed over 25th Street and up to the time of the accident?
"Answer: Yes as it passed over but not at time of accident.

"Interrogatory No. 8: Did plaintiff see the involved engine before the accident?
"Answer: Yes but west of 25th Street.

"Interrogatory No. 9: If you answer the foregoing interrogatory in the affirmative, did plaintiff see the involved engine approximately two car lengths west of 25th Street?
"Answer: Yes.

"Interrogatory No. 10: If plaintiff saw the involved engine before the accident, was said engine backing in an easterly direction?

"Answer: No.

"Interrogatory No. 11: If plaintiff saw the involved engine before the accident, was said engine at that time backing towards plaintiff on the lead track alongside which he was working?

"Answer: No."

Appellant's motion for new trial was overruled and that ruling is the only error assigned.

The allegations of negligence as found in the complaint upon which the case finally went to trial are as follows:

"Plaintiff says that the injuries were the direct and proximate results of each and all of the following acts of negligence and carelessness of the defendants, to-wit:

"(1) That the defendant, New York Central Railroad Company, ordered and directed plaintiff to work along its right-of-way and rails of its switch aforesaid, and carelessly and negligently failed and omitted to provide any safeguards whatever to protect this plaintiff while at work as aforesaid, from its locomotive being operated over the switch. . . .

"(4) That the defendants knew that this plaintiff was at work on the track where he was injured and with such knowledge negligently backed said locomotive at, against and over him without keeping any lookout whatever for him upon said track.

"(5) That the defendants knew plaintiff was at work near said track where he was injured, and with such knowledge negligently backed said locomotive at, against and over him without giving any warning or notice whatever of the approach of said train.

"(6) That the section foreman in charge of the plaintiff wholly failed to give any attention to the safety of this plaintiff while he was at work upon the tracks of the defendant, New York Cen-

tral Railroad Company, to protect him from approaching trains."

The appellant first asserts that all the specifications of negligence involve a charge of negligence against the engineer who was exonerated by the verdict, and consequently the exoneration of the co-defendant servant must be held to exonerate the master in this case. The rule sought to be invoked applies in cases where the negligence of the master necessarily depends upon the negligence of the servant. It does not apply where negligence of this master himself, or of other servants not exonerated, is charged and proven. *Inter State Motor Freight System* v. *Henry* (1942), 111 Ind. App. 179, 38 N. E. (2d) 909. The sixth specification clearly charges the appellant with negligence in no way involving the conduct of the engineer, and since, in our opinion, under the law and the evidence introduced to support that specification of negligence the judgment must be affirmed, the others will not be further noticed.

The case was tried and the jury instructed upon the theory that the appellee Graham could be held liable in this case, although both parties now concede in their briefs that he could not be, because the Act applies only to railroads engaged in interstate commerce and not to individuals. See *Lee* v. *Central of Georgia Ry. Co., etc.* (1917), 147 Ga. 428, 94 S. E. 558. Under the circumstances we have considered appellant's first contention only in the light of the theory upon which the case was tried.

The appellee introduced in evidence Rule 4033 of the appellant company which reads as follows:

"Rule Number 4033. Foremen shall give such careful attention to their men from the time they enter upon the tracks until they leave them as is

necessary to see that the work is done with safety and efficiency."

The appellant introduced Rules 4007 and 4032, which read as follows:

"Rule Number 4007. Employees must look in each direction before stepping upon, crossing or standing too close to tracks."

"Rule Number 4032. Employees must be on the lookout for their own safety and must not depend upon foremen or other persons to warn them of approach of trains or cars. In places where clear view cannot be obtained, extra precaution must be taken."

These rules were in full force and effect at the time of the accident.

The appellant insists that Rule 4033, if a safety rule at all, was not one promulgated for the safety of employees; that it has no application to this case and the verdict against it cannot be predicated thereon. In this we cannot agree. It was the duty of appellant to adopt and promulgate reasonable rules for the safety of its employees. *Evansville, etc., R. Co.* v. *Holcomb* (1894), 9 Ind. App. 198, 36 N. E. 39; *Chesapeake & Ohio R. Co.* v. *Russo, Admr.* (1930), 91 Ind. App. 648, 163 N. E. 283; *Louisville, etc., R. W. Co.* v. *Heck, Admr.* (1898), 151 Ind. 292, 50 N. E. 988. And the men have a right to rely upon the reasonable enforcement of such rules. *Kurn* v. *Stanfield,* 8 Cir. (1940), 111 Fed. (2d) 469. Rule 4033 appears in appellant's book of safety rules, in which book the second rule appearing states: "The rules contained herein are issued for the purpose of insuring greater personal protection to passengers, employees and the public." These rules were available to the men and were read to them

at each safety meeting and they were filed with the Public Service Commission of Indiana.

Appellant specifically contends, however, that Rule 4033 was promulgated only for the interest, welfare and safety of the public and the shippers of goods, and not for the safety of employees, including appellee as a section hand. This rule may have been promulgated with reference to the interests, welfare and safety of the public and the shippers of goods as contended by the appellant, but if so, it was certainly promulgated also with reference to the safety of employees, for it plainly requires foremen to give such careful attention *to their men* as is necessary to see that the work is done *with safety.* It is our opinion that the word "safety" in this rule refers to the safety of men, including the men doing the work about the tracks, and the word "efficiency" refers to the performance of the work, and any construction excluding that idea would be a strained one. The construction of such rules is for the court, *Cleveland, etc., R. Co.* v. *Bergschicker* (1904), 162 Ind. 108, 69 N. E. 1000, and in this case it was in our opinion rightly construed by the trial court to be a rule promulgated for the safety of employees. The rules in question being, as they were, within the issuable facts in this case, it was proper to introduce them in evidence for or against the company, *Baltimore, etc., R. Co.* v. *Roberts* (1903), 161 Ind. 1, 67 N. E. 530, and the appellant itself introduced two of them.

Nor is the rule as so construed inconsistent with the others, as claimed by the appellant. Rules 4007 and 4032 require care on the part of the men. Rule 4033 requires care on the part of the foremen. In substance and taken together they require the men to use care for their own safety and not to rely entirely upon a warning from the foreman and they re-

quire the foreman to use care for those under his charge and direction, and not to rely entirely on the care to be exercised by them.

The evidence, insofar as it pertains to the questions to be decided, shows that the accident occurred at Duane Yards, located in or near the city of Terre Haute and consisting of a large number of switches, lead tracks and two main line tracks. The tracks run generally east and west and are intersected at right angles by 25th Street, the main portion of the yards being west of 25th Street. East of 25th Street is a building called a coal dock which is located on a knoll. The main line tracks run parallel east and west just south of the coal dock. The track serving the coal dock is the first one north of it and inclines slightly up to it from the west. Just north of that track and at the foot of the knoll runs a track called the north lead track, just south of the south rail of which the appellee was working when injured.

The morning of the accident the crew had started cutting weeds west of 25th Street, working eastwardly along the tracks. When they came to the coal dock, they separated and all except appellee went to the south of it, he working to the north of it alone at a point about 200 to 225 feet east of 25th Street.

The engine had been switching up and down there for several hours before the accident. Just prior to the accident it had stood still west of 25th Street for several minutes and then, with eleven cars hooked to the front end, started backing east. The engineer had seen appellee working along the track and there was nothing to obstruct the view between appellee and the engine, but after the engine crossed 25th Street the engineer could no longer see appellee from his seat in the engine because of the height of the engine and tender and be-

cause of the fact that he was looking toward the west for the conductor's signal.

The engineer cut off the steam about 100 feet east of 25th Street, then coasted about 100 feet until he received the stop signal, whereupon he applied the air and stopped in 25 to 30 feet. The appellee, who was working facing the east, neither saw the engine nor heard it or any warning of its approach.

At the time of the accident two trains were passing on the main line, one going east and one west. Whistles were blowing, bells ringing and steam blowing off. The assistant foreman had left appellee working alone there 10 or 15 minutes before the accident, but he at no time looked to the west to see if an engine was approaching on the lead track, nor did he leave anyone or anything there to warn appellee of an engine's approach. He himself testified that because of the many engines whistling he did not know whether the involved engine whistled or not, and another employee working about 20 feet from the track testified that he did not notice whether the engine sounded any whistle or rang any bell. The fireman was tending his fire, and neither he nor anyone else saw the accident. After he stopped the engine the engineer heard appellee's outcry and found him under the engine between the tracks. He sustained serious injuries, including the loss of his right leg and the left foot except the great toe.

The evidence would justify the jury in believing the foreman in charge of appellee knew or should have known the conditions under which he was working; that he was working there alone pushing his weed-cutter toward the east, which would put his back toward a switch engine approaching from the west; that he might be so engrossed in his work as not to observe the approach of the engine; that the whistle and

bell on the switch engine if sounded might not be susceptible of identification as a warning of the approach of an engine on the north lead track; and that no thing or any person was there to warn appellee of the approach of the engine, the operator of which could not, and the fireman of which might not, see him. Whether the foreman in any manner complied with rule 4033, and whether under all of the conditions and circumstances his failure so to do if he did so fail constituted negligence, were questions for the jury to determine. Whether the appellee was himself guilty of negligence in failing to comply with Rules 4007 or 4032, or otherwise, was also a question for the jury, but his conduct would not bar a recovery in this case if it amounted to contributory negligence only.

The appellant calls our attention to the fact that the complaint charges the section foreman in charge of appellee *wholly* failed to give any attention to the safety of appellee and says no verdict could be predicated upon said charge, since the foreman testified he warned appellee to be on the lookout for this engine 10 or 15 minutes before the accident, and such warning refutes the charge that the foreman *wholly* failed. The evidence on the subject is conflicting, and we can consider only that favorable to the appellee.

The appellee tendered its Instruction Number 13, which was given by the court and which reads as follows:

"If you should find from a preponderance of the evidence in this case that under the rules of the New York Central Railroad Company adopted and in force on the 24th day of August, 1943, at the time of the alleged injury, that it was the duty of the section foreman to give such careful attention to their men from the time they entered upon the tracks until they leave them as is necessary to see

that the work is done with safety and efficiency; and if you further find from a preponderance of the evidence that the foreman in charge of the plaintiff failed to exercise reasonable and ordinary care to give such careful attention to the plaintiff from the time he entered upon the tracks until the time of the accident as was necessary to see that the work was done with safety and efficiency, then I instruct you that such failure would constitute negligence; and I further instruct you that if you find from a preponderance of the evidence that such negligence, if any, of the foreman proximately contributed in whole or in part to the injury of the plaintiff as charged in his complaint, then your verdict should be for the plaintiff provided he has established the other material allegations of his complaint by a preponderance of the evidence."

The appellant objected to the giving of that instruction upon several grounds, some of which have been disposed of by what has already been said. Appellant further insists the rule has no application because the evidence in this case shows that at no time was plaintiff working upon the tracks or between the rails, but was working south of the south rail of the track. The evidence most favorable to the appellee shows he was working near the end of the ties upon which the rails were laid. It is not necessary for one to be working between the rails in order to be considered as working upon the track. As was said in the case of *Gates* v. *Chicago, St. P. & I. C. R. Co.*, 82 Iowa 518, 48 N. W. 1040, 1041:

"The track of a railroad is not merely the rails and ties upon which cars are run, but it is the 'road, course, way,' (Webster,) and includes all that enters into and composes the road, the course, and way. The embankment upon which the rails and ties are laid is a part of the whole that makes the railroad track."

The evidence shows without contradiction that the general foreman had gone about other business early on the morning of the accident and had left appellee ▮ and the others in his gang in charge of an assistant foreman, and the appellant asserts the instruction to be misleading in that the jury must have believed it had reference to the general foreman and not to the assistant foreman, and further believed that the entire absence of the general foreman from the scene of the accident must necessarily have constituted an infraction of the rule. The rule applies to "foremen." In our opinion the jury could not, under the evidence, have been misled or confused by the instruction, but must have known that it had reference to the assistant foreman in actual charge of the men.

The appellant finally contends the instruction is erroneous in that it invades the province of the jury for the reason that it instructs the jury that the failure of the foreman to comply with the alleged rule would constitute negligence, or in other words was negligence *per se*, whereas it is a matter for the jury to determine under all the facts and circumstances as shown by the evidence whether or not such a violation of the rule would constitute negligence. The instruction actually advises the jury that the foreman's failure to use reasonable and ordinary care to give the attention required by the rule would constitute negligence. However, it is unnecessary to discuss the technical accuracy of the instruction, for at the request of the appellant the court gave its tendered instruction Number 31 based upon Rule 4007, one of the rules upon which it depended, which reads as follows:

"You are instructed if you find from a preponderance of the evidence that on the date of the involved accident defendant, New York Central Railroad Company, had a rule to the effect that em-

ployees must look in each direction before stepping upon, crossing or standing too close to tracks, and if you further so find that Theophile Verpleatse, stepped upon, crossed or stood too close to the tracks along side which he was working, and upon which said track the involved engine was backing, and that such failure on the part of Theophile Verpleatse in stepping upon, crossing or standing too close to said track, was the sole proximate cause of said accident, then plaintiff can not recover and your verdict should be for the defendants."

It will be observed that Instruction Number 31 tendered by the appellant and given by the court wholly omits any reference to negligence or the use of ordinary care, but says that appellee's failure to observe Rule 4007, if the sole proximate cause of said accident, would compel a verdict for defendants. Thus, if the instruction complained of incorporates an erroneous principle of law, the one tendered by the appellant with a request that it be given incorporates the same erroneous principle framed in still more faulty language, and under such circumstances the appellant must be held to have invited the error, and it cannot be heard to complain. *Duncan* v. *State* (1908), 171 Ind. 444, 86 N. E. 641; *Prudential Insurance Co.* v. *Bidwell* (1937), 103 Ind. App. 386, 8 N. E. (2d) 123.

Appellant seeks to avoid the effect of their tendered Instruction Number 31 on the ground that the appellee made no specific objection to it under Rule 1-7 of the Supreme Court, 1943 Revision. The effect of a failure to make specific objections to an opponent's tendered instruction is to make unavailable as a cause for new trial or on appeal any error with respect to the giving of it. Failure to object does not in all things place the party so failing in the position occupied by the one tendering the instruction.

The appellant next complains of the refusal of the court to give several of its other tendered instructions. All of these instructions involve the same proposition of law and will be considered together. They each embrace the idea that if the appellee saw the engine backing toward him, then any failure of the appellant to give any warning or signal of its approach; to provide a watchman to warn him of its approach; to provide any safeguards to protect him while at work; in failing to keep a lookout for him; or the failure of appellant's foreman to give attention to appellee's safety while working along said track; was not actionable negligence. Typical of these instructions was Number 41 which reads as follows:

> "If you find from a preponderance of the evidence that Theophile Verpleatse saw the engine backing toward him, then you are instructed that any failure on the part of the defendants to give any warning or signal of the approach of the involved engine, was not actionable negligence."

Without considering the correctness of the instructions themselves, we point out that in their answers to interrogatories the jury found the appellee did see the engine when it was west of 25th Street, but did not see the engine when it was backing toward him in an easterly direction. Thus the jury found the facts upon which these requested instructions purported to declare the law did not exist, and so the refusal to give them cannot be deemed to have been prejudicial error. *Taggart* v. *Keebler* (1926), 198 Ind. 633, 154 N. E. 485; *Barnett* v. *Feary* (1885), 101 Ind. 95.

The appellant complains of the refusal of his tendered Instruction Number 27, which reads as follows:

> "If you find from a preponderance of the evidence the bell on the engine was ringing and the whistle on the engine was sounded as it backed to-

ward and entered upon 25th Street, and you further so find that plaintiff failed to heed said signals, and that his said failure was the sole proximate cause of said accident and his alleged injuries, then plaintiff cannot recover and your verdict should be for the defendants."

The instruction is erroneous in several respects. It first assumes that the ringing of the bell and the sounding of the whistle at the place indicated was sufficient notice so that the appellee should have heard and identified its signals as a warning of the approach of the engine and should have acted upon such knowledge, which question was one for the jury to determine. It further would require the appellee to "heed" said signals, or "to regard the same with care," entirely omitting therefrom the element of ordinary care under the surrounding circumstances. The instruction was properly refused.

At the trial appellant's general foreman was called and testified the appellee told him he was working on the bank alongside the track and had slipped and fallen under the engine, and the appellee did not resume the stand to deny this conversation. The appellant contends, therefore, that such testimony must be of controlling effect in this case. The witness had called at the hospital and conversed with the appellee two weeks after the accident when appellee was in bed, and as the witness thought, probably "doped" to relieve his pain. No other testimony offered by either side would support any such theory and the appellee had already testified positively as to how the accident occurred. Under these circumstances it was for the jury to determine what weight, if any, should be given this bit of testimony.

Although we have not referred to the particular manner in which each question was raised, we have, we be-

lieve, discussed every proposition made by the appellant. We are impressed that the cause was fairly and carefully tried and the judgment should be affirmed. So ordered.

NOTE.—Reported in 59 N. E. (2d) 916.

## ON PETITION FOR REHEARING

DRAPER, C. J.—In our original opinion we said the overruling of appellant's motion for new trial was the only error assigned. The appellant also assigned error in the overruling of its motion for judgment in its favor in conformity to the verdict returned by the jury, notwithstanding the general verdict in favor of appellee.

To sustain that motion the appellant first asserted that since the verdict found for the appellee Graham it also in effect found for appellant, and so a judgment against appellant based on that verdict cannot stand. We believe that phase of appellant's contention was sufficiently considered in our original opinion.

The appellant also asserts that assuming the correctness of our construction of Rule 4033 as a safety rule under which the foreman was required to give attention to the appellee in the interest of the latter's safety, the appellee nevertheless did have some warning of the approach of the engine and therefore the failure of the foreman to warn appellee of its approach could not have been the proximate cause of his injuries. This contention is based on the proposition that by its verdict the jury exonerated the engineer and so must have found that he did give the appellee some warning of the approach of the train and so was not negligent, and if the engineer did give appellee some warning of the approach of the train, the foreman's failure to give him any additional warning could not have been the proximate cause of the appellees' injuries. The appellant cites *Baltimore, etc., R. Co.* v. *Abegglen*

(1908), 41 Ind. App. 603, 84 N. E. 566, and *Baltimore, etc., R. Co.* v. *Musgrave* (1900), 24 Ind. App. 295, 55 N. E. 496, to the proposition that if a traveler on a highway already has knowledge of the approach of a train, the failure of the railway company to give him further notice of its approach by way of statutory signals could not be the proximate cause of his injury. The soundness of those cases cannot well be doubted, but the rule announced in them seems scarcely applicable to this case. Assuming, as claimed by appellant, that the jury exonerated Graham because they found he was not negligent in failing to give any warning of the approach of the train, and admitting that his exoneration on that charge also exonerated the appellant in that regard, the verdict is still not tantamount to a finding that the appellee heard and recognized the warning and knew of the close approach of the engine. The evidence is to the effect that the appellee heard no warning and did not see the train aproaching him. We adhere to our opinion that it was for the jury to determine whether, considering the conditions and circumstances under which the appellee was working, as outlined in our original opinion, the conduct of the foreman measured up to the requirements of Rule 4033, and we cannot say as a matter of law that no failure on his part to comply with the requirements of that rule could have been the proximate cause of appellee's injuries.

The appellant contends we erred in stating it conceded in its brief that the engineer could not be held liable in this case. We find in one of appellant's briefs the following language: "At no time during the trial of said cause, was any instruction tendered by either party hereto, or given by the court which would or did exonerate Engineer Graham on account of the fact that Engineer Graham would not be liable under the Federal

Employers' Liability Act." We construed this to be an admission that the engineer would not be liable under the Act. If we were mistaken in our construction of this language it has not harmed the appellant, for its contention with reference to the exoneration of the servant being the exoneration of the master was considered only in the light of the theory upon which the case was tried.

The appellant complains because, in our original opinion, we used the words "general foreman" to distinguish the section foreman from his assistant, and appellant insists this reference is not justified by the evidence. However, the record shows the section foreman was the one who gave the general orders concerning the work, and reference to him as such in our opinion could not be harmful to appellant.

The appellant insists that any construction of Rule 4033 which would require the foreman to give any attention to the safety of their men while working along the tracks, so far as danger from approaching engines is concerned, is erroneous, since Rule 4032 specifically imposes upon the men the duty to be on the lookout for themselves and not to depend on the foreman and therefore makes the men solely responsible for their own safety. The parties agree that we are required to construe the rules together so as to give effect to all, if possible, and not to abrogate any. This we have attempted to do. Rules, to be enforceable, must be reasonable. If we were to construe this rule as releasing the appellant from any duty to use any care for the safety of its men working along the tracks, it would immediately become unreasonable and therefore unenforcible and of no avail to the appellant. *Willis* v. *Atlantic & Danville R. Co.* (1898), 122 N. C. 905, 29 S. E. 941.

There is uncontradicted evidence to the effect that at safety meetings appellant's foremen cautioned workmen, including appellee, to depend upon their own watchfulness and be on the lookout for engines, and appellant asserts that under this interpretation of Rule 4033 the appellee could not rely upon any warning from others. The evidence does not disclose that he relied upon any warning from any other, and in any event the interpretation put upon the rules by appellant's foreman, while entitled to consideration, cannot be permitted to contradict or abrogate an explicit rule made for the safety of an employee. 39 C. J., p. 480, § 593.

The appellant insists our construction of the rules is impractical; that section hands frequently work along the tracks alone rather than in groups, and our interpretation of the rules would require the foreman to keep a constant lookout for the safety of each individual workman. The necessity for such watchfulness would of course largely depend upon the conditions under which the men were directed or permitted to work.

Other questions raised or elaborated in the petition for rehearing do not in our opinion require further comment. Petition denied.

NOTE.—Reported in 60 N. E. (2d) 784.