BURNSIDE, APPELLEE, *v.* THE CINCINNATI STREET RAILWAY CO., APPELLANT.

(No. 7703—Decided April 13, 1953.)

*Messrs. Lindhorst & Dreidame,* for appellee.
*Mr. Leo J. Brumleve, Jr.,* for appellant.

MATTHEWS, P. J. This is an appeal on questions of law, resulting from a mistrial. After a hearing lasting for six days issues of fact were submitted to the jury which, after deliberation, reported its inability to agree and was discharged. Upon conclusion of the evidence the defendant had moved the court to arrest the case from the jury and for an instructed verdict which had been overruled. Immediately after the jury

was discharged the defendant moved for judgment in its favor. This motion was overruled also. This appeal is from those orders.

Originally, the city of Lockland was joined as a codefendant. Before filing his third amended petition, the plaintiff dismissed the city of Lockland from the action without prejudice and the case proceeded to trial against the defendant, The Cincinnati Street Railway Company, on the plaintiff's third amended petition and the defendant's answer thereto.

In this action, the plaintiff seeks to recover damages on account of serious personal injuries received by him in a collision between his automobile and defendant's streetcar while he was operating his automobile eastwardly and the defendant was operating its streetcar westwardly on Wyoming avenue in the city of Lockland, a short distance west of its intersection by Cooper avenue. The collision was between the left front corner of the streetcar and the left front corner and left side of the automobile. The plaintiff alleged that The Cincinnati Street Railway Company was a common carrier of passengers and that it operated streetcars over tracks in the exact center of Wyoming avenue.

This collision occurred on the night of April 20, 1947, during a hard rain and when visibility was low. The headlights of both vehicles were illumined, but the rays did not extend very far. As the plaintiff approached the point of collision, his automobile was astride the south rail of the streetcar track, which rail he alleged was south of the center of Wyoming avenue and that his automobile was south of that center, thereby placing it on his right side of the street.

In his petition, the plaintiff alleged that the streetcar rails and the surface of Wyoming avenue at the area in question had been constructed by the city and street railway company jointly; that in doing so they

used bricks in resurfacing the street; and that in laying them had made the surface of the street about two inches higher than the top of the rails, thereby leaving a trough or rut along both rails, the south trough being about two and one-half feet south of the center of the street. The plaintiff alleged also that for a long time prior to and on April 20, 1947, the bricks along the rails had become loosened or displaced, causing holes of a depth greater than the depth of the troughs. The plaintiff charged that the construction of the rails and surface of the street in this way was illegal.

The plaintiff alleged also that at about 10:45 p. m. on April 20, 1947, as already mentioned, he was proceeding along Wyoming avenue; that it was raining heavily and the surface of the street was covered with water; that the ruts and holes were filled with water and were not discernible by him; that as he approached he was on the extreme right until he came upon a parked automobile in his path; and that he turned into the last lane of travel just south of the center of the street and continued around a curve in the street when he observed defendant's streetcar approaching toward him, the left wheels of which were on the rail of which his automobile was astride.

The plaintiff alleged also that upon seeing the streetcar he attempted to swerve his automobile to the right to avoid a collision, but that the left wheels of his automobile caught in the trough or rut whereby it was thrown into a skid and swung broadside against the front of the streetcar.

The charges of negligence against The Cincinnati Street Railway Company were that it failed to keep Wyoming avenue open, in repair, and free from nuisance, in that it resurfaced the street in such a way as to raise the glazed-brick surface above the car rails, thereby placing the rails in a deep narrow trough, when it knew, or should have known that the wheels of

an automobile would drop into the trough making it difficult for the operator to extricate the wheels without skidding when the street was wet; in failing to repair the holes adjoining the rails; in installing the rails without lawful authority; in maintaining them in the center of the street without posting warnings to indicate the condition of the street; and, finally, in creating an absolute nuisance by thus placing the rails in a public street.

Both defendants filed motions to strike and to make definite, which were sustained, resulting in the filing of an amended petition and a first amended petition. Upon the filing of a second amended petition, the defendants demurred. The demurrers were overruled, whereupon they filed separate answers. Upon dismissal of the city of Lockland, a third amended petition was filed, to which the defendant, The Cincinnati Street Railway Company, filed an answer, and it was upon these pleadings that the case went to trial. The charges of negligence remained substantially the same in all of plaintiff's pleadings. The principal difference between the petition and the third amended petition is that the third amended petition sets forth the terms of the agreement between the city of Lockland and The Cincinnati Street Railway Company, whereby the latter became bound to keep the street within the rails and for a distance of 18 inches outside the rails in good repair, and allegations showing that the rails were allowed to sink by reason of the rotting of the wooden ties upon which they rested.

The allegations that the track was in the exact center of Wyoming avenue, and that the south rail was "about" two and one-half feet south of the center of the street were repeated in the plaintiff's petition and amended petitions.

In broad outline, there was very little dispute developed at the trial and the plaintiff was clearly en-

titled to have the issues submitted to the jury unless
his own testimony showed that he was negligent as a
matter of law in operating his automobile on the left
side of the street and that such negligence caused or
contributed directly to cause the collision. The de-
fendant asserts that the plaintiff repeatedly by plead-
ings, by deposition taken before the trial, and by his
testimony at the trial asserted or admitted that he
was operating his automobile before and at the time of
the collision to the left of the center of Wyoming
avenue, in violation of Section 6307-25, General Code.
This contention requires an analysis of the pleadings,
the deposition, and the plaintiff's testimony to deter-
mine their true construction and legal effect.

(1) Let us consider the pleadings. It is true that
the plaintiff repeatedly alleged that the *tracks* were in
the exact center of Wyoming avenue at the point of
collision. Webster defines track, in this connection, as
parallel lines of rails with the fastenings, ties, etc.,
for a railway. It was developed at the trial and is con-
ceded in defendant's reply brief that the center of the
street at the point of collision is between the rails but
only eight or nine inches north of the south rail and
not equidistant from the rails constituting the track.
It is argued from this premise that the tracks are not
in the exact center of Wyoming avenue.

Applying the statutory rule of liberal construction
of pleadings, we are unable to adopt the defendant's
interpretation of the allegations of these pleadings.
The *tracks* are in the center of the street. It is true
that the width on one side of the center line is less
than on the other, but the track is in the center. It
would be a harsh superrefinement to hold a pleader
to the meaning of an allegation of a nonessential fact,
determinable only by a mathematical calculation based
on a surveyor's data. The essential averment is as to
the location of the plaintiff's automobile with refer-

ence to the center of the street, and as to that the plaintiff repeatedly alleged without any variation that his automobile was south of the center of the street.

In 31 Corpus Juris Secundum, 1072, 1073, Section 301, it is stated:

"One who desires to avail himself of admissions in a pleading must accept them as an entirety; he cannot select such portion as may suit him and reject the remainder, where it qualifies and explains the admission offered."

See, also, *Beck* v. *General Ins. Co. of America,* 141 Ore., 446, 18 P. (2d), 579; and *Cummings, Admx.,* v. *Atlantic Coast Line Rd. Co.,* 217 N. C., 127, 6 S. E. (2d), 837. We think that rule is applicable here.

By Section 11345, General Code, we are required to give pleadings a liberal construction with a view to substantial justice. See, also, 31 Ohio Jurisprudence, 583, Section 49. It is our opinion that to allow the meaning thus determined of an allegation of a nonessential fact to control a clear allegation of the essential fact would not be in accord with either the letter or spirit of Section 11345, General Code. The most that can be said is that the evidence disclosed a latent ambiguity between an essential and a nonessential allegation.

So, considering the allegations solely as parts of pleadings and applying the rules applicable to the constructions of pleadings, we conclude that the plaintiff has not alleged or admitted in his pleadings that he was on the left or wrong side of Wyoming avenue at the time of the collision, or any other fact from which the legal conclusion could be drawn that he was negligent and that such negligence contributed directly to the collision. It is clear he had no such intention.

(2) But, it is urged that the allegations of the plaintiff's pleadings were given a greater legal effect by

their introduction in evidence. The record shows that defendant's counsel cross-examined the plaintiff at great length on the allegations of his pleadings, after which the plaintiff's pleadings were introduced in evidence. In view of our construction of those pleadings, we are of the opinion that their allegations can be given no probative value favorable to the defendant. The testimony given by the plaintiff on cross-examination must be weighed to determine its intrinsic value, and the allegations of his pleadings could be considered incorporated into and a part of his testimony only by his adoption of their allegations without explanation or interpretation on either direct or cross-examination. We find no such incorporation or adoption in this record. Furthermore, as already noted, we find no allegation in the pleadings of any fact that would defeat recovery.

(3) Sometime before the trial the defendant took the plaintiff's deposition. At the trial, this deposition was used by the defendant on cross-examination of the plaintiff, and finally, by agreement of the parties, it was introduced in toto as a part of the cross-examination. We do not understand the law to be that thereby the plaintiff must be considered as having testified on cross-examination at the trial to all that was contained in the deposition. Our understanding is that the legal effect was the same as proof of any other statement contrary to what the witness had testified to. The only difference as we see it is that this prior inconsistent statement was under oath and would, therefore, weigh more heavily against the plaintiff's credibility as a witness.

However, we find no direct irreconcilable statement in this deposition. The important—the vital fact was the location of the plaintiff's automobile with reference to the center of the street immediately before and at the time of the collision. The plaintiff at all

times testified that it was to the right of the center. Whether his left wheels were to the right or left of the south rail was unimportant, except in disclosing the circumstances of the collision and in testing the reliability of the plaintiff's testimony that he was on the right side of the street.

The plaintiff, operating his automobile, and the defendant, operating its streetcar, had equal right to the use of Wyoming avenue. Each was bound to exercise reasonable care under the circumstances. Because the automobile could be turned laterally and the streetcar could not, this greater mobility imposed upon the operator of the automobile the duty to turn from the track in time to avoid collision, but, on the other hand, the defendant was bound to maintain the street within its rails and for 18 inches without its rails in a reasonably safe condition, and if the plaintiff had started to turn from the tracks in time to have succeeded in avoiding colliding with the streetcar, but was prevented from succeeding in doing so by the negligent manner in which the defendant discharged its duty in maintaining the street, then plaintiff would be entitled to recover, provided, of course, that he was in all respects in the exercise of due care.

(4) We should also take notice of defendant's contention, based upon a variance in the plaintiff's testimony in the distance at which he first saw the streetcar. It is our opinion that this variance affects the weight to be given to plaintiff's testimony only. He had a right to be on the street, on, at, or near the tracks. His right was affected not by where he was when he saw the streetcar for the first time, but on seeing it, whether he exercised reasonable care in turning aside in time to avoid the collision, had defendant performed its duty to keep the street in reasonably safe condition.

Finally, it is urged strongly that the case of *Winkler*

v. *City of Columbus,* 149 Ohio St., 39, 77 N. E. (2d), 461, controls this case and requires a reversal and final judgment for defendant. In that case, the plaintiff being thoroughly familiar with a sidewalk and knowing of its defective condition and observing its defective condition at the time nevertheless stepped upon it and was injured. She admitted all this upon the witness stand. The court held that her own admission showed she was guilty of negligence directly contributing to her injuries. As is said in the opinion (page 43), the plaintiff's admission showed "clearly that her negligence contributed directly to her injury (one of the precise, ultimate facts in issue)" thereby presenting a question of law to be determined by the court. It is manifest from what we have already said that it is our opinion that this record shows no admission of the precise ultimate fact from which the conclusion must be drawn that the plaintiff was negligent.

For these reasons, we conclude that the trial court did not err in overruling the defendant's motions for an instructed verdict and for judgment in its favor.

The judgment is affirmed.

*Judgment affirmed.*

Ross and HILDEBRANT, JJ., concur.