William M. GULLEDGE, Jr., Indv. and d/b/a Standard Construction Company, Appellant,

v.

GREIF BROS. CORPORATION, Appellee.

No. 16166.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 30, 1973.

Sheinfeld, Maley & Kay, Joel P. Kay, Houston, for appellant.

Ross, Banks, May, Cron & Cavin, Daniel H. Johnston, Jr., Houston, for appellee.

COLEMAN, Chief Justice.

This is a suit for damages for breach of contract. The case was tried to the court without a jury. Findings of fact and conclusions of law have been filed.

Appellee manufactures fiber and steel drums and ships them out over a spur track which connects with the Southern Pacific Railroad. Appellant is a contractor for railroad maintenance work. In 1966 appellant submitted a bid to appellee for the re- pair of its spur track. The bid included this language:

"Trackage will be guaranteed against any maintenance cost to you for a period of five (5) years."

The bid was accepted by appellee, and the work was completed and the consideration paid.

In 1971 appellee determined that the trackage was in need of maintenance work, and requested appellant to make the necessary repairs. When appellant failed to do so, appellee requested bids on the work. The bid submitted by Earl Campbell Co. was accepted. The trial court found:

"9. Plaintiff thereafter hired Earl Campbell Co. to make the repairs necessary to keep the track in use.

"10. $1,684.00 was a reasonable price for the repairs made by Campbell."

In his conclusions of law the trial court found:

"6. Maintenance expense for repairs which came within the scope of the warranty were required in early 1971, i. e., during the warranty period, in order to keep the tracks usable.

"7. Defendant's failure to perform or furnish these repairs constituted a breach of warranty of the contract with plaintiff."

By points of error appellant contends that the trial court erred "in finding and determining as a matter of fact or law" that all of the repairs performed by the Earl Campbell Co. came within the scope of the warranty and that appellant had breached his contractual agreement. Appellant also contends that "there is insufficient evidence to warrant the trial court in holding that the damage sustained by appellee was the actual cost of repairing the spur track and that such cost was a reasonable price for the repairs."

It is appellant's position that he should be charged only with the warranty of its

workmanship and of the materials used by it in the construction of the underlying road bed for the spur track. Appellant points out that there is no evidence that under its original contract it was required to, or did, replace the railroad ties, or repair or replace the frog switch. These items were included in the contract with the Earl Campbell Co. Appellant's contract provided for removing foul ballast and for constructing a green timber board road under the track. Both contracts provided for resurfacing and regauging the tracks. The proposal submitted by appellant for the original work, and that submitted by the Earl Campbell Co., refer to "repairs to trackage" as the subject of the proposals.

The proposal submitted by appellant for the work subsequently performed in 1966 provided that the work "will be in strict accordance with Southern Pacific Lines standard specifications and subject to their approval before acceptance."

It provided:

"Area of repairs will begin at the south edge of driveway back of building and end at connection to Southern Pacific portion of trackage.

"Trackage will be guaranteed against any maintenance cost to *you* for a period of five (5) years." (emphasis added)

As an alternate appellant proposed to resurface trackage on existing ballast, cross level, regauge and replace one broken rail for a price of $1,000.00, but that due to base failure there would be no guarantee.

Appellee issued its purchase order No. 15125 to Standard Construction Co. in which Standard's original proposal was quoted in part, including:

". . . Trackage will be guaranteed against any maintenance cost to *us* for a period of five (5) years." (emphasis added)

Standard submitted a bill to appellee dated 6–24–66 referring to "Your P. O. # 15125," reading:

"furnishing labor material and equipment to repair trackage serving your plant at LaPorte, Texas for the lump sum price of $2,384.00."

■ The term "trackage" must be held to include in its meaning the bed, surface, rails, ties, ballast, frog switch, spikes and all other components of the spur track. American Creosote Company v. Springer, 257 La. 116, 241 So.2d 510 (1970); Burnside v. Cincinnati St. Ry. Co., 94 Ohio App. 240, 114 N.E.2d 848, 850 (1953); New York Cent. R. Co. v. Verpleatse, 116 Ind.App. 1, 59 N.E.2d 916, 922 (en banc, 1945).

■ A consideration of the language of both appellant's proposal and appellee's purchase order leaves no doubt that the term "trackage" was used by the parties in that sense. Appellant by clear language of its own choosing guaranteed the trackage against any maintenance cost to appellee. It did not choose to limit its guarantee to the labor performed or the material furnished.

In City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515 (Tex.1968), the court said:

"It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the Court. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193 (Tex.Sup.1962). It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls.

". . . .

"What is said in the Restatement § 230 and Williston § 610, is not out of harmony with the holdings of this Court that all parts of the contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties. See Smith v. Liddell, 367 S.W.2d 662 (Tex.Sup.1963); Ohio Oil Company v. Smith [365 S.W.2d 621 (Tex.Sup.1963)], supra.

"Where a question relating to the construction of a contract is presented, as here, we are to take the wording of the instrument, consider the same in the light of the surrounding circumstances, and apply the pertinent rules of construction thereto and thus settle the meaning of the contract."

█ There is testimony that in 1966 the track was sagging and the gauge of the track was in bad condition. The bed of the track was soft. Appellee· called three repair companies "to quote repairs." A representative of Standard Construction Company came out to appellee's premises and investigated the track, and the proposal was then submitted. There was testimony that it was appellee's purpose to put the trackage in first class shape by means of the repairs authorized in 1966. There is nothing in the evidence concerning the surrounding circumstances to warrant a deviation from the clear language found in the written instruments.

The repairs made in 1971 came within the scope of the guarantee agreement. The trial court found that the repairs made by the Earl Campbell Co. were necessary to keep the track in use. There was testimony that the deficiencies in the track in 1971 were caused by normal usage. Appellant's Points One and Two are overruled.

█ When it became necessary to repair the track in 1971, Mr. Czarnecki, following the procedure established by appellee, requested bids on the job. He was the offi-

cial who had charge of the routine maintenance of the track. He examined the bids. The bid submitted by Campbell Construction Company was forwarded to the main office of the company and a purchase order was issued. Mr. Czarnecki testified without objection that the bid was "fair." We construe this as being equivalent to testimony that the price quoted was "reasonable." There was no testimony that the price was excessive or unreasonable. The evidence is sufficient to support the finding of the trial court that the cost of the repairs was reasonable.

Affirmed.